UNITED STATES of America, Appellee,

v.

Gerson NAGELBERG and Vivienne Nagelberg, Appellants.

Nos. 256, 257, Dockets 35068, 35210.

United States Court of Appeals, Second Circuit.

Argued Sept. 18, 1970.

Decided Nov. 9, 1970.

Certiorari Denied March 1, 1971.

See 91 S.Ct. 935.

Henry B. Rothblatt, New York City, (Stephan H. Peskin, New York City, of counsel), for appellants.

John Wing, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., Andrew J. Maloney and Gary P. Naftalis, Asst. U. S. Attys., of counsel), for appellee.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Gerson and Vivienne Nagelberg, husband and wife, were jointly tried and convicted on charges of conspiracy to import narcotics from Canada and on one substantive count of illegal purchase and receipt of heroin, and Vivienne was convicted alone on another substantive count, in the United States District Court for the Southern District of New York before Jack B. Weinstein, *Judge*, and a jury. We find no error and affirm the judgment.

Appellants' convictions arose from a scheme to smuggle into the United States narcotics seized in Canada by Canadian enforcement officials, and purloined by corrupt Canadian officers for eventual distribution here. Existence of the conspiracy and delivery of heroin to appellants in New York was amply established by the testimony of Mourant, one of the corrupt Canadian officers. Appellant Vivienne Nagelberg took the stand in her own defense and testified that she had never been criminally involved in narcotics traffic, and on the contrary, had actually operated at all times as an undercover agent for the federal government in the narcotics area. On rebuttal, the government put on the stand one Benichou, who testified as to his prior criminal involvement with appellant Vivienne Nagelberg in 1966 and 1967. While in Canada, Mrs. Nagelberg had given a statement to Canadian authorities implicating herself criminally with Benichou. At trial, Judge Weinstein suppressed that statement since the authorities had not given her the *Miranda* warnings, and although such warnings are not required under Canadian law, an American agent was extensively involved in her questioning and detention.

On appeal, appellants raise four points:

1. Benichou's testimony was inadmissible as fruit of the poisonous tree, since Benichou originally came to the attention of federal authorities through the suppressed statement.

2. The trial court improperly refused to grant appellants' motion for severance.

3. Appellant Gerson Nagelberg was prejudiced by references made by Benichou to his previous criminal activity, even though the trial court admonished the jury to disregard these remarks.

4. The trial court erred in denying appellants' motion to restrain the prosecution from cross-examining Gerson concerning his prior criminal record if he were to take the stand in his own defense.

■ As to appellants' first point, it is well established that the fruit of unlawful evidence may nevertheless be admitted if the government demonstrates that the evidence would have come to its attention from an independent source. See Maguire, "How to Unpoison the Fruit—The Fourth Amendment and the Exclusionary Rule," 55 J.Crim.L.C. & P.S. 307, 313–17 (1964). Here, even if the statement obtained from Vivienne Nagelberg in Canada were properly suppressed, there existed a number of independent sources of information which would have led the government to Benichou. For one thing, Vivienne Nagelberg's own trial testimony revealed her connections with Benichou after she knew that her statement made in Canada had been suppressed. Any taint that may have existed was therefore re-moved by appellant's voluntary statements. Cf. Wong Sun v. United States, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Furthermore, Canadian authorities knew of Benichou's criminal activity as a narcotic trafficker before Vivienne Nagelberg's detention. Benichou's testimony on rebuttal was, therefore, admissible.[1]

■ Appellants are also incorrect in arguing that the motion to sever should have been granted. The charges on which defendants were tried arose from the same transactions, Fed.R.Crim.P., Rule 8(a), and appellants have failed to establish any tangible evidence of prejudice arising out of their joint trial.

■ The third ground urged for reversal, that Gerson Nagelberg was prejudiced by inadvertent references to his prior criminal activity by Benichou during his rebuttal testimony, is premised on the general rule that the prosecution may not introduce evidence of a defendant's bad character or prior criminal activity. This rule is inapplicable, however, when the defense has introduced evidence of defendant's good character, and the prosecution is merely rebutting that claim. McCormick, Law of Evidence § 157 (1954). Here, an examination of Vivienne Nagelberg's testimony reveals that she was testifying as to the good character of her husband, as well as of herself. Thus any references by Benichou to the criminal conduct of Gerson Nagelberg, whether they were intentional or inadvertent, constituted proper rebuttal to the testimony of Vivienne Nagelberg on her husband's behalf.

---

1. Moreover, the statement was probably admissible and quite likely should not have been suppressed in the first place. The *Miranda* rule has no application in a case such as this, where the arrest and interrogation were by Canadian officers interested in Canadian narcotic and immigration offenses under their investigation. There is no showing that the statement was coerced or taken in violation of the laws of Canada. There is no claim of "rubbing pepper in the eyes," or ohter shocking conduct. The presence of an American officer should not destroy the usefulness of evidence legally obtained on the ground that methods of interrogation of another country, at least equally civilized, may vary from ours. Birdsell v. United States, 346 F.2d 775, 782 (5 Cir. 1965), cert. denied, 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366; Brulay v. United States, 383 F.2d 345 (9 Cir. 1967) ; Stonehill v. United States, 405 F.2d 738 (9 Cir. 1968).

As to appellants' fourth and final claim, the ruling by the trial court refusing to restrain cross-examination of Gerson on his prior criminal record if he should take the stand was well within the court's discretion. See Spencer v. Texas, 385 U.S. 554, 561, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); United States v. Cuadrado, 413 F.2d 633 (2d Cir. 1969), cert. denied, 397 U.S. 980, 90 S.Ct. 1107, 25 L.Ed.2d 391 (1970). Appellants' reliance on United States v. Palumbo, 401 F.2d 270 (2d Cir. 1968), cert. denied, 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969), is clearly misplaced, for this court emphasized in that case that the trial court possessed power to restrain such cross-examination within rather narrow limits.[2] No abuse of this discretion has been demonstrated in this case.

Judgment affirmed.

2. "In any event, we do not accept the broad proposition that a trial judge has no discretion to bar use of prior convictions to impeach a defendant. In short, we hold that a trial judge may prevent such use, if he finds that a prior conviction negates credibility only slightly but creates a substantial chance of unfair prejudice, taking into account such factors as the nature of the conviction, its bearing on veracity, its age, and its propensity to influence the minds of the jurors improperly." 401 F.2d 270 at 273.