**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Terry COVINGTON,
Defendant-Appellee.**

No. 84–1150.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1984.

Decided April 16, 1985.

As Amended on Denial of Rehearing
and Rehearing En Banc
Feb. 25, 1986.

Mark J. Bennett, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellant.

Peter C. Wolff, Jr., Honolulu, Hawaii, for defendant-appellee.

Before WALLACE, HUG, and SCHROEDER, Circuit Judges.

HUG, Circuit Judge:

The Government appeals from an order suppressing the confessions made by appellee Terry Covington ("Covington") to an

employee of a private corporation providing security and patrol services to the United States Army on Kwajalein Island, one of the islands of the Republic of the Marshall Islands. The court has appellate jurisdiction pursuant to 18 U.S.C. § 3731 (1982). Because the district court applied an incorrect legal standard in suppressing Covington's statements, we reverse and remand.

## FACTS

On December 29, 1979, Covington was arrested on Kwajalein Island of the Republic of the Marshall Islands by Washington Patrol Service ("WPS") investigator Jack Guse ("Guse") for incest in violation of the Trust Territory Code. WPS provides investigative and patrol services at the Kwajalein Missile Range on Kwajalein Island pursuant to a contract with the United States Army. At the time of the arrest, Guse was also a sworn Micronesian police officer authorized by the Republic of the Marshall Islands to make arrests for violations of Marshall law.

In accordance with Marshall law, Guse read Covington a *"Miranda"*-type warning at the time of his arrest. He did not request to see an attorney at that time. Covington was transferred to the custody of two other WPS officers and was transported to a detention facility on Kwajalein Island. While in transit, Covington was once again advised of his rights to remain silent and to consult with an attorney. At that time, Covington did request to see an attorney.

After obtaining a statement from Covington's daughter, and approximately one hour after the arrest, Guse and another WPS investigator interrogated Covington in his cell at the detention facility. Neither Guse nor his fellow investigator had actual knowledge that Covington had previously requested an attorney. When questioned, Covington agreed to cooperate. Covington was re-advised of his *"Miranda"* rights and confessed to the crime. The government of the Republic of the Marshall Islands determined not to prosecute, referring the matter to the United States officials. Covington was flown to Honolulu, Hawaii and a criminal indictment issued, charging Covington with carnal knowledge of his 13-year-old daughter within the special maritime and territorial jurisdiction of the United States, pursuant to 18 U.S.C. § 2032 (1982).

Before trial, Covington moved to suppress his confession and to dismiss the indictment for lack of jurisdiction. The magistrate issued a report recommending that the motion to dismiss be denied. The magistrate recommended that the confession be suppressed on the ground that it was obtained in violation of Marshall law. The district court approved the magistrate's findings on the motion to suppress. This was challenged by the Government. On reconsideration, the district court affirmed its original order suppressing the confession, but did not rely on the reasons stated by the magistrate. Instead, the district court ruled that

> [t]he court is unwilling to decide how far *Edwards v. Arizona*, 451 U.S. 477 [101 S.Ct. 1880, 68 L.Ed.2d 378] (1981) reaches under Marshall law. *Edwards*, 451 U.S. at 487 [101 S.Ct. at 1886], has decided for us that such evidence as was obtained in this case is inadmissible in our courts. As a matter of due process and control over our own system of Justice, that rule should apply regardless of where the evidence was obtained, if it is to be introduced here.

We disagree with the legal standard applied by the district court and reverse and remand for further proceedings consistent with our holding.

## DISCUSSION

■ As a threshold question, we must determine the status of the Republic of the Marshall Islands. The Republic of the Marshall Islands is part of the Trust Territory of the Pacific Islands, which the United States has administered as a United Nations Trusteeship since 1947. *See Commonwealth of Northern Mariana Islands v. Atalig*, 723 F.2d 682, 684 (9th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 3518, 82

L.Ed.2d 826 (1984); *Matter of Bowoon Sangsa Co.,* 720 F.2d 595, 599 (9th Cir. 1983). The United States exercises powers of administration, legislation, and jurisdiction over the Republic of the Marshall Islands pursuant to an agreement with the United Nations. *See* Trusteeship Agreement for the Former Japanese Mandated Islands, July 18, 1947, art. 3, 61 Stat. 3301, 3302 T.I.A.S. No. 1665, 8 U.N.T.S. 189, 192. However, the United States does not possess sovereignty over the Trust Territory. *Atalig,* 723 F.2d at 684; *McComish v. Commissioner,* 580 F.2d 1323, 1330 (9th Cir.1978); *see also Gale v. Andrus,* 643 F.2d 826, 832 (D.C.Cir.1980).

The system of government in the Trust Territory is "in a transitional phase as the political subdivisions of the area move toward self-government and the termination of the Trusteeship Agreement." *Matter of Bowoon Sangsa,* 720 F.2d at 600. Two alternatives have been considered by the inhabitants of the Trust Territory: "free association" and commonwealth status. *Id.* The Republic of the Marshall Islands has opted for free association status with the United States. *Id.* The result of free association status is that United States sovereignty does not apply to the Republic of the Marshall Islands, and the district is afforded full internal self-government. Consequently, we treat this confession as if it had been taken in what was undeniably a foreign country.

Covington claims that his statements were taken in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *Miranda* declares that the fifth and fourteenth amendments' prohibition against compelled self-incrimination requires that custodial interrogation be preceded by advice to the accused that he has the right to remain silent and also the right to the presence of an attorney. *Miranda,* 384 U.S. at 467–68, 471, 86 S.Ct. at 1624–25, 1626. *Miranda* further states:

> If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

*Id.* at 474, 86 S.Ct. at 1628 (emphasis added). *Edwards* reaffirms that once an accused asserts his right to counsel, he cannot be subject to further interrogation by the authorities until counsel has been made available to him, unless the accused initiates conversation with the police. *Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85.

■ The magistrate and the district court correctly concluded that the initiation of interrogation by the investigators after Covington had requested an attorney violated the procedure prescribed by *Miranda* and *Edwards.* The fact that the particular investigators did not have knowledge of the request does not avoid the prohibition against further interrogation when the request was made to others within the same investigatory authority. *See United States v. Scalf,* 708 F.2d 1540, 1544–45 (10th Cir.1983); *White v. Finkbeiner,* 687 F.2d 885, 887 n. 9 (7th Cir.1982), *vacated on other grounds,* 465 U.S. 1075, 104 S.Ct. 1433, 79 L.Ed.2d 756 (1984). Those conducting the investigation failed in their obligation to determine, before they resumed the interrogation, if a prior request for an attorney had been made by Covington.

■ We must now determine whether that failure requires the invocation of the exclusionary rule. The dictates of *Miranda* and *Edwards* are based upon the fifth and fourteenth amendments, which prohibit the agents of the United States and agents of the state governments from compelling a person to be a witness against himself in any criminal case. "*Miranda* was, and remains, a prophylactic device designed to protect the exercise of Fifth Amendment rights by criminal defendants." *United States v. Booth,* 669 F.2d

1231, 1237 (9th Cir.1981). When there has been no compulsion by a state or federal agent, either directly or by significant participation by such an agent, then the constitutional mandate has not been violated. Therefore, when a law enforcement officer of a foreign country does not follow the requisites of *Miranda* and *Edwards,* the fifth amendment right against self-incrimination has not been violated and there is no requirement for invocation of the exclusionary rule. The evidence may of course be properly excluded on due process grounds, if the statements were involuntary or the evidence was otherwise untrustworthy.

■ The magistrate held that the law of the Marshall Islands required compliance with *Miranda* and *Edwards* and thus he was required to invoke the exclusionary rule. However, we have held that the exclusionary rule is not applicable to interrogations performed by foreign police officers acting in their own country. *United States v. Chavarria,* 443 F.2d 904 (9th Cir.1971). In *Chavarria,* we gave the following explanation for not excluding statements obtained by foreign officials in violation of the accused's *Miranda* rights.

> *Miranda* was intended as a deterrent to unlawful police interrogations. *When the interrogation is by the authorities of a foreign jurisdiction, the exclusionary rule has little or no effect upon the conduct of foreign police.* Therefore, so long as the trustworthiness of the confession satisfies legal standards, the fact that the defendant was not given *Miranda* warnings before questioning by foreign police will not, by itself, render his confession inadmissible.

443 F.2d at 905 (emphasis added). We have recognized no exclusionary rule for statements obtained in violation of the foreign jurisdiction's own law. The reasons stated in *Chavarria* are just as applicable when the procedure violates the foreign law. To apply the exclusionary rule to statements obtained in violation of foreign legal requirements, which could be more or less restrictive than our own, in order to deter the foreign police from violating their own laws, would be an extension of the exclusionary rule beyond current authority and would be contrary to the restricted use of the exclusionary rule counseled in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

■ Thus, the exclusionary rule is not applicable if the statements are obtained by foreign officers in a foreign country even if it may violate the foreign law. However, the constitutional guarantees of the fifth amendment as well as other constitutional safeguards secure United States citizens against acts of agents of the United States whether acting at home or abroad. *Reid v. Covert,* 354 U.S. 1, 5–7, 77 S.Ct. 1222, 1224–26, 1 L.Ed.2d 1148 (1957); *Stonehill v. United States,* 405 F.2d 738, 743 (9th Cir.1968), *cert. denied,* 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747, *reh. denied,* 396 U.S. 870, 90 S.Ct. 39, 24 L.Ed.2d 125 (1969). The extent of involvement of United States officials thus becomes a vital inquiry. "Whether or not United States officials are substantially involved, or foreigners are acting as their agents or employees, is a question of fact to be resolved in each case." *United States v. Toscanino,* 500 F.2d 267, 280 n. 9 (2d Cir.1974) (citations omitted). *See also United States v. Rose,* 570 F.2d 1358, 1362 (9th Cir.1978) (the court must closely scrutinize the attendant facts to determine whether a joint venture between foreign and United States officials exists).

■ If Guse was acting as a law enforcement officer of the United States, then the requirements of *Miranda* and *Edwards* would be applicable. The district court has made no findings on this question. In the event it is determined that Guse was not operating as a law enforcement officer of the United States but, instead, as a foreign law enforcement officer, *Miranda* and *Edwards* are not applicable, but a determination must be made as to whether the trustworthiness of the confession satisfies due process standards.

We therefore reverse and remand to the district court for further proceedings pursuant to this opinion.

REVERSED and REMANDED.

SCHROEDER, Circuit Judge, dissenting.

The defendant is an American citizen employed at the Kwajalein Missile Range who was indicted pursuant to 18 U.S.C. § 2032. The majority correctly recognizes that admission of the defendant's confession would violate the principles enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which protect rights guaranteed by the fifth and sixth amendments of the United States Constitution. The law of the Republic of the Marshall Islands also requires its exclusion.[1] We can agree, therefore, that if the defendant was arrested, interrogated and prosecuted under the same law, be it American or Marshallese, the confession would be inadmissible. Here, however, the majority ironically holds that the confession is admissible if it was the product of Marshallese law enforcement because Covington is being prosecuted under United States law in United States courts.

In so holding, the court reasons that the law of the Marshall Islands applicable to this proceeding is as foreign to the law of the United States as the law of Transylvania. It further asserts that application of our standards would have no affect on conduct of law enforcement agents of the Marshall Islands in dealing with American personnel and would not deter them from taking actions which the American legal system disapproves.

This is mistaken. The relationship between the law of the United States and the law of the Marshall Islands is special. The United States has taken great pains to ensure that its personnel in the Marshall Islands, including defendant, are afforded all the protections provided by United States law regardless of whether they are prosecuted under the law of the Marshall Islands or, as here, of the United States. The United States, given its permanent presence in the Marshall Islands and its connection with law enforcement on Kwajalein atoll, possesses an undeniable interest in influencing police conduct.

The governments of the United States and the Marshall Islands have a unique historic relationship.[2] *See Commonwealth of Northern Mariana Islands v. Atalig,* 723 F.2d 682, 684 (9th Cir.), *cert. denied,* ── U.S. ──, 104 S.Ct. 3518, 82 L.Ed.2d 826 (1984); *In re Bowoon Sangsa Co.,* 720 F.2d 595, 600–601 (9th Cir.1983); *Gale v. Andrus,* 643 F.2d 826, 828–30 (D.C.Cir. 1980); Clark, *Self-Determination and Free Association—Should the United Nations Terminate the Pacific Islands Trust?,* 21 Harv.Int'l.L.J. 1, 1–8 (1980). The Marshall Islands are part of the Trust Territory of Micronesia, which covers over 2,000 islands in the western Pacific Ocean. Since 1947, the United States has acted as trustee for the territory. *Gale,* 643 F.2d at 828; Trusteeship Agreement for the Former Japanese Mandated Islands, July 18, 1947, 61 Stat. 3301, T.I.A.S. No. 1665, 8 U.N.T.S. 189. In the four decades that followed assumption of the trusteeship, the United States has delegated sufficient au-

---

**1.** In this instance, the foreign law mirrors ours. The Republic of the Marshall Islands itself has adopted the *Miranda* doctrine to guarantee certain rights of the defendants it prosecutes. The Marshall Islands has incorporated the *Miranda* doctrine into its constitution, Republic of the Marshall Islands Const. art. II, § 4, and into its statutes, 12 T.T.C. § 68. The courts of the Trust Territory also apply the doctrine. *Trust Territory v. Techur,* 7 T.T.R. 412, 416–17 (1976); *Trust Territory v. Remengesau,* 6 T.T.R. 94, 96–97 (1972); *Trust Territory v. Sokau,* 4 T.T.R. 434, 436–38 (1969); *Trust Territory v. Poll,* 3 T.T.R.

387, 391–92 (1968). Hence, both the United States and the Marshall Islands employ *Miranda* as a vital legal doctrine for the protection of significant constitutional rights.

**2.** What the D.C. Circuit observed in another trust territory case is equally true here: "If one fails to appreciate the true characteristics of this unique relationship for purposes of this case, it is easy to get lost ... trying to pigeonhole or label this entity called [the Marshall Islands]." *Gale v. Andrus,* 643 F.2d 826, 830 (D.C.Cir.1980).

thority to the territory to have it deemed an independent sovereign. *See Atalig,* 723 F.2d at 684; *Gale,* 643 F.2d at 828; *McComish v. C.I.R.,* 580 F.2d 1323, 1331 (9th Cir.1978).

At present, pursuant to Article VI of the Trusteeship Agreement, in which the United States assumed the responsibility of promoting the development of self-government by the inhabitants of the Islands, *Gale,* 643 F.2d at 829, the Marshall Islands has elected to assume the status of a "free association," which would continue to confirm upon it independent sovereignty. *In re Bowoon Sangsa Co.,* 720 F.2d at 600.[3] The present status of the Marshall Islands, however, is somewhat unclear as it is in a "transitional phase" between the status of trust territory and free association.

The terms of the status of free association evolved through negotiation between the United States and the Republic of the Marshall Islands. Fourteen years of negotiations have led to the signing of the Compact of Free Association, which is the basic document setting forth the relationship between the two governments under the status of free association. Compact of Free Association, June 25, 1983, United States—Republic of the Marshall Islands, S.Rep. 626, 98th Cong.2d Sess. 34 (1984) (unratified and resubmitted to the House of Representatives on Feb. 20, 1985), Office for Micronesian Status Negotiations, Washington, D.C.; *see also* President's Message to Congress Accompanying Free Compact of Association, Mar. 30, 1984, 1984 U.S. Code Cong. & Ad.News D33 (urging congressional approval of Compact). *See generally* Clark, *supra,* at 11–38. While the Compact of Free Association, as of now, remains unratified by Congress, it has been

approved by the President under the authority granted to him pursuant to 48 U.S.C. § 1681.[4] The Compact of Free Association, though not in full force and effect, articulates clear and deepfelt concerns that the United States desires to be applied to its personnel and citizens in the Marshall Islands.

The Compact of Free Association is supplemented by various agreements, one of which is the Status of Forces Agreement, May 24, 1982, United States—Republic of the Marshall Islands, Office for Micronesian Status Negotiations, Washington, D.C., which further defines the legal status of United States personnel in the Marshall Islands. The Status of Forces Agreement deals with problems arising from the permanent presence of United States military forces in the Islands. It is agreed by all that these are also expressions of policy which should be followed. Under the Status of Forces Agreement, where, as in this case, an employee of the United States military forces is charged with a serious crime, he may be tried in either a court of the Marshall Islands, or a court of the United States. *Id.* at art. 12, § 2(b). The Status of Forces Agreement also guarantees that where such personnel are prosecuted in the courts of the Marshall Islands, they shall be entitled to many of the rights and protections of United States law, including protection from the use of a confession obtained by illegal or improper means:

United States personnel prosecuted under the jurisdiction of ... the Marshall Islands ... *shall be entitled to all guarantees and rights provided by the constitution and laws of the prosecuting*

---

**3.** For a scholarly discussion of the doctrine of free association, see generally Clark, *supra,* at 38–66.

**4.** Section 1681(a) provides:

Until Congress shall further provide for the government of the Trust Territory of the Pacific Islands, all executive, legislative, and judicial authority necessary for the civil administration of the Trust Territory shall continue to be vested in such person or persons and shall be exercised in such manner and

through such agency or agencies as the President of the United States may direct or authorize.

Congress, thereby, delegated its administrative responsibility under the Trusteeship Agreement to the President, who then delegated it to the Department of Interior. Exec. Order No. 11021, 27 Fed.Reg. 4409 (Mar. 9, 1962). For a general discussion of the statutory and regulatory framework, see *Gale,* 643 F.2d 826.

*Government* for its own citizens and to the following guarantees and rights to the extent that they are not provided by that constitution and those laws:

.    .    .    .    .

(*l*) To be protected from the use of a confession or other evidence obtained by unlawful or improper means;

*Id.* at § 9 (emphasis added).

This particular provision is but one of many provisions designed to ensure that American military personnel in the Marshall Islands will be afforded the same protections regardless of which government, the Marshall Islands or the United States, undertakes the prosecution. Some of the other protections specifically provided are for a prompt and speedy trial, *id.* at § 9(a), right of confrontation, *id.* at (d), right to public trial, *id.* at (j), and right of appeal, *id.* at (p). The United States clearly has asserted its strong interest in deterring undesirable conduct by agents enforcing the law of the Marshall Islands when that conduct is directed at United States personnel.

The majority relies on *United States v. Chavarria*, 443 F.2d 904 (9th Cir.1971), where we held that violation of *Miranda* standards did not render a confession to a Mexican police officer inadmissible. We did so because, given the relationship between the United States and Mexico, the United States had neither an interest in affecting nor an ability to affect the conduct of Mexican law enforcement officers. As the *Chavarria* court stated,

*Miranda* was intended as a deterrent to unlawful police interrogations. When the interrogation is by the authorities of a foreign jurisdiction, the exclusionary rule has little or no effect upon the conduct of foreign police. Therefore, so long as the trustworthiness of the confession satisfies legal standards, the fact that the defendant was not given *Miranda* warnings before questioning by foreign police will not, by itself, render his confession inadmissible.

*Id.* at 905.[5]

The situation here, however, is different. The protections of *Miranda* are relevant because the police officers are hired by the United States military and, though they enforce Marshallese law, they enforce it almost solely against Americans. The United States, because it hires the police, who are Americans, to enforce Marshallese law against Americans, on an atoll exclusively controlled by the American military, has an interest in affecting, and can affect, the conduct of the police whose actions violate both Marshallese[6] and United States[7] law. *Cf. United States v. Trenary*, 473 F.2d 680, 681 (9th Cir.1973) (stating in dicta that *Miranda* is inapplicable when the foreign arrest violated no foreign law) (citing *United States v. Nagelberg*, 434 F.2d 585 (2d Cir.1970), *cert. denied*, 401 U.S. 939, 91 S.Ct. 935, 28 L.Ed.2d 219 (1971)). The efforts of the United States during the transition of the Marshall Islands from trust territory to free association underscores the American interest in maintaining and insuring for Americans, who are subject to prosecution in the courts of the Marshall Islands, the protec-

---

**5.** *Chavarria*, 443 F.2d 904, and *United States v. Trenary*, 473 F.2d 680 (9th Cir.1973), have led to a "foreign police officer" exception to *Miranda*. Under this exception, *Miranda* does not apply when the arrest and interrogation is by a foreign officer in a foreign country, *see Chavarria*, 443 F.2d at 905, absent a showing that the statement was either coerced or taken in violation of the laws of the foreign country, *see Trenary*, 473 F.2d at 681, or that a joint venture existed between the authorities of the foreign country and the United States, *see United States v. Emery*, 591 F.2d 1266, 1267 (9th Cir.1978). Other circuits have fashioned a similar excep-

tion. *See, e.g., United States v. Nolan*, 551 F.2d 266, 273 (10th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977); *United States v. Nagelberg*, 434 F.2d 585 (2d Cir.1970), *cert. denied*, 401 U.S. 939, 91 S.Ct. 935, 28 L.Ed.2d 219 (1971).

**6.** Footnote 1 *supra*.

**7.** *Edwards*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378; *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

tions that Americans enjoy in the courts of the United States.

By ignoring the strong interest of the United States, the majority manages to reach a peculiar result which conflicts with our policies toward the Marshall Islands. Under today's decision, this defendant, an American citizen prosecuted in the courts of his own country pursuant to United States law, may be entitled to fewer protections than if he were prosecuted in the courts of the Marshall Islands under Marshallese law. The protections should be the same. I would affirm the district court.