**UNITED STATES of America**

v.

**John Phillip Walker LINDH.**

**No. CR. 02–37–A.**

United States District Court, E.D. Virginia.

July 12, 2002.

See also 198 F.Supp.2d 739, 2002 WL 1489373.

Randy Bellows, United States Attorney's Office, Alexandria, VA, for plaintiff.

William Bruce Cummings, David Thomas Williams, William B. Cummings, P.C., Alexandria, VA, James Brosnahan, San Francisco, CA, for defendant.

### *ORDER*

ELLIS, District Judge.

The matter came before the Court for a hearing on a motion to quash subpoena or for alternative relief filed by Robert Young Pelton ("Pelton"). Defendant, the government and Pelton all appeared at the hearing, by counsel, and oral argument was heard.

The circumstances underlying the instant motion are easily summarized.[1] John Phillip Walker Lindh ("Lindh") is an American citizen who, according to the ten-count Indictment filed against him in February 2002, joined certain foreign terrorist organizations in Afghanistan and served these organizations there in combat against Northern Alliance and American forces until his capture in November 2001. Following both his capture and the quelling of an uprising at the Qala-i-Janghi prison compound, Lindh was taken to a hospital in Sheberghan, Afghanistan. There he was interviewed by Pelton, a writer and freelance journalist assigned to cover the military conflict in Afghanistan on behalf of Cable News Network, LP, LLLP ("CNN"). The interview was recorded by a CNN cameraman and also by Pelton on a small hand-held video camera. Thereafter, on December 3, 17 and 19, 2001, CNN televised most of the audio and video portion of Pelton's interview with Lindh.

On June 27, 2002, Pelton was served with a subpoena to appear to testify at a hearing on Lindh's various motions to suppress, including a motion to suppress the December 1, 2001 CNN interview. In support of this particular motion, Lindh, by counsel, argued, *inter alia,* that Pelton was acting as an agent of the U.S. military when he interviewed Lindh. On July 5, 2002, Pelton moved to quash the subpoena on the ground that as a journalist he has a First Amendment privilege against disclosure of information obtained during the news gathering process. In this regard, Pelton claims that he was acting as an independent journalist at the time of the December 1, 2001 interview, not as a government agent, as Lindh alleges. Moreover, Pelton contends that any assertion that he was acting as a government agent is not merely false, but also seriously jeopardizes his personal safety and professional security. Pelton also claims that he has no relevant information that cannot be obtained from other sources in the course of the suppression hearing. Finally, Pelton claims he was improperly served with the subpoena, as Lindh did not provide him with payment for certain mileage, as required by Rule 17(d), Fed.R.Crim.P.

█ A two-part analysis applies to Pelton's motion to quash,[2] namely: (i)

---

1. For a more extensive statement of the facts of this case, see *United States v. Lindh,* —— F.Supp.2d ——, 2002 WL 1489373 (E.D.Va. July 11, 2002).

2. Because Rule 17 expressly provides for a motion to quash only in the case of subpoenas *duces tecum,* there is a threshold question whether a motion to quash is appropriate to challenge a subpoena to testify. *See* 2 Wright, Federal Practice & Procedure § 273, nn. 12–13 and cited cases (recognizing that although some courts allow motions to quash subpoenas to testify, "the better practice in ordinary

whether the subpoena satisfies the requirements of Rule 17, Fed.R.Crim.P., and (ii) whether the First Amendment journalist privilege exists and, if so, whether it applies in the circumstances presented in the instant case. *See United States v. King*, 194 F.R.D. 569 (E.D.Va.2000). The first part of this analysis, applied here, is quite simple and supports a denial of Pelton's motion to quash, as there is no serious contention that the subpoena issued to Pelton did not comply with Rule 17. To the contrary, the record clearly reflects that the subpoena was properly issued and served in accordance with the requirements of Rule 17, Fed.R.Crim.P.[3] Nor is there any doubt that the subpoena was not issued frivolously or for purposes of harassment, as Lindh has made a "plausible showing" that Pelton's testimony would be both material and favorable to the defense. *See United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) (recognizing that Rule 17 supports the conclusion that a defendant must make "some plausible showing of how ... testimony would have been both material and favorable to his defense" before he can establish a violation of his constitutional right to compulsory process).

The second part of the analysis is more difficult, as the judicial history of the First Amendment journalist privilege is not notable for its clarity.[4] This judicial history begins with *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), where the Supreme Court majority considered and expressly rejected the creation of a First Amendment journalist privilege in criminal cases.[5] Nonetheless, Justice Powell issued a concurring opinion in *Branzburg* "to emphasize what seems to me to be the limited nature of the Court's holding." *Branzburg*, 408 U.S. at 709, 92 S.Ct. 2646 (Powell, J., concurring). In this regard, Justice Powell recognized the following:

> [I]f the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationship without a legitimate need of law enforcement, he will have access to the court on a motion to quash....

*Id.* at 710, 92 S.Ct. 2686. Over time, the views expressed in Justice Powell's concurring opinion, which were repeated by Chief Judge Wilkinson in *In re Shain*, 978 F.2d 850 (4th Cir.1992), continue to play a role in the law of this and other circuits.[6]

cases is to require the witness to appear and claim any privilege or immunity"). Here, it is assumed, but not decided, that a motion to quash is an appropriate procedural vehicle to raise the First Amendment privilege issue.

**3.** No serious argument was made at the hearing concerning Lindh's failure to provide Pelton with payment for certain mileage in accordance with Rule 17(d), Fed.R.Crim.P. and, in any event, this would not have been a basis for quashing the subpoena, as it is a matter that could easily and promptly have been remedied by the issuing party.

**4.** For a helpful summary and analysis of the history of the journalist privilege, see *King*, 194 F.R.D. 569.

**5.** Specifically, the *Branzburg* majority held as follows:

> [T]he only testimonial privilege for unofficial witnesses that is rooted in the Federal Constitution is the Fifth Amendment privilege against compelled self-incrimination. We are asked to create another by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do. *Id.* at 689–90, 92 S.Ct. 2646.

**6.** *See, e.g., Shain*, 978 F.2d 850; *United States v. LaRouche Campaign*, 841 F.2d 1176 (1st Cir.1988); *Storer Communications, Inc. v. Giovan*, 810 F.2d 580 (6th Cir.1987); *United States v. Caporale*, 806 F.2d 1487 (11th Cir. 1986); *United States v. Burke*, 700 F.2d 70

Thus, today, a First Amendment journalist privilege is properly asserted in this circuit where the journalist produces some evidence of confidentiality or governmental harassment.[7]  Only where such evidence exists may district courts then proceed to strike a balance in the circumstances between the competing interests involved, namely "freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct." *In re Shain*, 978 F.2d at 853 (quoting *Branzburg*, 408 U.S. at 710, 92 S.Ct. 2646).

■ Pelton concedes that he cannot invoke any First Amendment privilege on the basis of confidentiality of sources or government harassment; those factors are simply not present here.  Still, he argues that the special circumstances of his role as a war correspondent in Afghanistan is a sufficient factor to trigger application of the privilege.  This is a novel claim; no case is cited as direct support for granting

First Amendment protection to journalists when they act as war correspondents.[8]  In any event, assuming, without deciding, that some mode of balancing survives *Branzburg* and that a journalist's status as a war correspondent is sufficient to trigger that balancing, it is clear on this record that the balance at this point weighs in favor of Pelton's duty to testify.  This is so because Lindh's Sixth Amendment right to prepare and present a full defense to the charges against him is of such paramount importance that it may be outweighed by a First Amendment journalist privilege only where the journalist's testimony is cumulative or otherwise not material.  Neither of these circumstances is present on the current record.  Rather, there is no doubt that Pelton's testimony is material to Lindh's non-frivolous argument that Pelton was acting as a government agent at the time he interviewed Lindh, an assertion that Pelton, by affidavit, strongly denies.[9]  Moreover, Pelton appears to have

---

(2nd Cir.), *cert. denied*, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *United States v. Steelhammer*, 539 F.2d 373 (4th Cir.1976).

7. *See Shain*, 978 F.2d at 852 (holding that "the absence of confidentiality or vindictiveness in the facts of this case fatally undermines the reporter's claim to a First Amendment privilege"); *Steelhammer*, 539 F.2d at 376 (holding that the district court was correct in requiring the reporters to testify in "the absence of a claim of confidentiality and the lack of evidence of vindictiveness").

8. It is worth noting that Pelton's concern that his personal safety as a war correspondent will be placed in serious jeopardy if he is required to testify arises not from the issuance of the subpoena, but rather is a result of Lindh's argument that Pelton was acting as a government agent at the time of the December 1, 2001 interview.  This is an argument Lindh is constitutionally entitled to assert whether or not the subpoena issues.  In the circumstances, therefore, it is arguably in Pelton's best interests to appear and testify, as he alleges, that he was not acting as a government agent at the time of the interview.

9. *See, e.g., United States v. Covington*, 783 F.2d 1052, 1056 (9th Cir.1985) (holding that "the constitutional guarantees of the fifth amendment as well as other constitutional safeguards secure United States citizens against acts of agents of the United States whether acting at home or abroad"); *United States v. Pullen*, 721 F.2d 788, 790 (11th Cir. 1983) (holding that *Miranda* applies to "private citizens who conduct an investigation [where] they have some connection with the government"); *Battie v. Estelle*, 655 F.2d 692, 698 (5th Cir.1981) (holding that custodial interrogation by court-appointed psychiatrist "must be treated the same as a custodial interrogation by a police officer or prosecuting attorney for the purpose of determining the applicability of *Miranda* "); *United States v. Emery*, 591 F.2d 1266, 1268 (9th Cir.1978) (holding that *Miranda* applies where a joint interrogation is conducted for the purposes of advancing the government's interests); *cf. United States v. Antonelli*, 434 F.2d 335, 336–37 (2d Cir.1970) (holding that *Miranda* does not apply to questioning by a private security guard where "there was no governmental knowledge or instigation of, influence on, or participation in any of the actions surrounding the taking of appellant into custody....")

had a unique opportunity to observe the conditions of Lindh's confinement and the circumstances under which he gave the CNN interview, factors which bear directly on the voluntariness of Lindh's statements.[10] Of course, this picture may change by the time Pelton is called to testify at the suppression hearing. By then other witnesses will likely have presented some testimony regarding the facts within Pelton's knowledge. If so, it may then be appropriate to address anew the balancing of the competing constitutional interests.

Accordingly, for the foregoing reasons, and for the reasons stated from the Bench, it is hereby **ORDERED** that Pelton's motion to quash subpoena or for alternative relief is **DENIED.**

It is further **ORDERED,** however, that Pelton has leave to renew the motion in the event he is called to testify as a witness at the suppression hearing, at which time the Court will revisit the question whether application of a balancing test is proper in the circumstances and, if so, what result is appropriate.

The Clerk is directed to send a copy of this Order to counsel for Pelton and to all counsel of record.

---

**10.** *See, e.g., Dickerson v. United States,* 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (recognizing that the test to determine whether a statement was involuntary "takes into consideration the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation"); *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (same); *United States v. Cristobal,* 293 F.3d 134 (4th Cir.2002) (recognizing that the test of voluntariness takes into account "the 'totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and the details of the interrogation") (citing *United States v. Pelton,* 835 F.2d 1067, 1071 (4th Cir.1987)).