Roger W. GALE, Appellant,

v.

Cecil D. ANDRUS, Secretary, Department of Interior.

No. 79–1274.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 8, 1980.

Decided Aug. 8, 1980.

---

Douglas L. Parker, Washington, D.C., for appellant.

Kenneth S. Canfield, Atty., Dept. of Justice, Washington, D.C., with who Carl S. Rauh *, U.S. Atty., and Leonard Schaitman, and Joseph B. Scott, Attys., Dept. of Justice, Washington, D.C., were on brief, for appellees.

Before TAMM and MacKINNON, Circuit Judges and OBERDORFER **, United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge MacKINNON.

Concurring opinion filed by District Judge OBERDORFER.

MacKINNON, Circuit Judge:

Roger Gale (Appellant) sought an injunction in the district court to compel the Department of Interior (Appellee) pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (1976) (FOIA), to disclose certain documents pertaining to him which were allegedly collected and held by the government of the Trust Territory of the Pacific Islands. The court held that the Freedom of Information Act did not apply and denied Gale's motion for summary judgment and dismissed his claim for lack of subject matter jurisdiction. We affirm on the grounds that the government of the Trust Territory (1) is not an "agency" under FOIA, (2) is not specifically included in the statute as it must be to make the Act applicable to it, and (3) is entitled to the statutory exemption for governments of territories and possessions because it is even more removed from substantial control by the United States than are the governments of our traditional territories and possessions.

* United States Attorney at the time the brief was filed.

** Sitting by designation pursuant to 28 U.S.C. § 292(a).

## I. FACTS

Gale is a citizen of the United States and formerly resided in the Trust Territory of the Pacific Islands. While there, he believed that he was subject to surveillance by the Trust Territory government through interception of his mail and monitoring of his telephone calls. Gale sought to determine if records were being kept on him. To this end, by letter of February 16, 1977, he requested from the Department of Interior, the Territory's supervising agency in the United States as explained in II *infra*, all records (1) in the Department files, including those maintained by (2) the Trust Territory, and by (3) the Office of Micronesian Status Negotiations which referred to him or to an organization known as "Friends of Micronesia" with which he was associated. (Appellee's Addendum 5) The Office of Territorial Affairs of the Department of Interior produced only one document from it files. However, it refused to search the files of the government of the Trust Territory or the Office of Micronesian Status Negotiations, explaining to Gale that the Department of Interior does not control the files of the Trust Territory, and the Office of Micronesian Status Negotiations maintains its own files.

Gale appealed this decision to the Department of Interior's Freedom of Information Act Officer on March 9, 1977, arguing that "the administrative structure of the Trust Territory, including the offices of the High Commissioner and the Attorney General, is a part of the Department of the Interior and, therefore, that the files possessed by Territory officials and their agents must be searched for the records which we seek." (Appellee's Addendum 9) The Assistant Secretary of the Interior denied Gale's appeal and attached a memorandum from the Office of the Solicitor explaining that the Trust Territory government was a separate and distinct legal entity outside the scope of the Freedom of Information Act (FOIA). (Appellee's Addendum 12–14)

Having exhausted his administrative remedies, Gale filed this suit in the district court to compel the Department of Interior to disclose any records maintained by the High Commissioner of the Trust Territory and his subordinates that referred to Gale or the Friends of Micronesia. Thereafter, Gale moved for summary judgment, and the Department of Interior moved to dismiss for lack of subject matter jurisdiction.

The district court granted the Department's motion and denied Gale's on three grounds. First, it held that the government of the Trust Territory is not an "agency" with the meaning of Section 2 of the Administrative Procedure Act, 5 U.S.C. § 551 (APA). The term agency as defined by this section applies for purposes of the FOIA. Thus the court lacked subject matter jurisdiction. Second, even assuming the government of the Trust Territory is an agency for FOIA purposes, it is exempt from coverage under the FOIA by virtue of the APA exemption of "governments of the territories or possessions of the United States." 5 U.S.C. § 551(1)(C). Finally, the court held that "the laws of the United States do not automatically apply to the Trust Territory but only if specifically stated to apply or if a clear congressional intent is expressed in the legislative history. Neither the APA nor the FOIA evidence such congressional intention." (App. 96) Gale appeals each one of these holdings.

## II. HISTORY AND STRUCTURE OF THE GOVERNMENT OF THE TRUST TERRITORY

The area collectively referred to as Micronesia covers over 2,000 islands and atolls in the western Pacific Ocean, including the Eastern and Western Caroline Islands, and the Marshall Islands. Between World War I and World War II they were governed by Japan under a League of Nations mandate. In 1947, the United States and the United Nations Security Council entered into a Trusteeship Agreement under which the United States became the "administering authority" and accepted administrative responsibility for the people of Micronesia. This area became known as the "Trust Territory". The United States received powers of administration, legislation, and jurisdic-

tion over the territory subject to the provisions of the Agreement. See Trusteeship Agreement for the Former Japanese Mandated Islands, July 18, 1947, 61 Stat. 3301; T.I.A.S. No. 1665 [hereinafter Trusteeship Agreement]. In addition the General Assembly of the United Nations, the Security Council and the Trusteeship Council each exercise some function in relation to the Trust Territory under the Charter of the United Nations, ch. XII, XIII, 59 Stat. 1048–1051, and the Trusteeship Agreement, 61 Stat. 3301–3305.

The United States also assumed the responsibility of promoting the development of self–government by the inhabitants of the islands. *Id.* at Art. 6.[1] Ultimate review of the Trust Territory remained in the hands of the United Nations Trusteeship Council and Security Council. The Trusteeship Council is authorized to consider annual reports which must be submitted by the United States, accept and examine petitions from the inhabitants of the Territory, and periodically visit the Territory. *Id.* at Arts. 4, 13; Charter of the United Nations, Art. 87, 59 Stat. 1050–51.

The United States Congress delegated its administrative responsibility under the Trusteeship Agreement to the President, 48 U.S.C. § 1681(a), who then delegated it to the Department of Interior. Exec. Order No. 11021, 27 Fed. Reg. 4409 (May 9, 1962). The Secretary of Interior established a local government in Micronesia consisting of executive, legislative and judicial branches. Secretarial Order 2918, 34 Fed.Reg. 157 (Dec. 27, 1968) [hereinafter Order 2918]. The High Commissioner of the Executive Branch (of the Trust Territory) is appointed by the President with the advice and consent of the United States Senate. 48 U.S.C. § 1681a. He is under the general supervision of the Secretary of the Interior, Order 2918, part II § 1, and has numerous executive responsibilities in the Trust Territory. These include the authority to submit proposed legislation to the Congress of Micronesia, *id.* at part II § 3, and the power to appoint officials to the executive branch, 2 Trust Territory Code § 24 (Supp. 1973).

The Secretary also appoints the Chief Justice and Associate Justices of the High Court, *id.* at part IV, while other judges are appointed by local administrators within the Trust Territory government. 5 Trust Territory Code §§ 204, 251, 301. The courts in Micronesia have general jurisdiction, *Alig v. Trust Territory of the Pacific Islands,* 3 Trust Territory Reports 603 (App.Div.1967), and are empowered under some circumstances to review actions of the High Commissioner. *People of Saipan v. Department of Interior,* 502 F.2d 90, 99 (9th Cir. 1974), *cert, denied,* 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975).

At the time of this action, the legislative branch consisted of a Senate and House of Representatives, Order 2918, part III § 1, whose members were elected locally. The Congress of the Trust Territory has authority to enact laws which may not be inconsistent with treaties or international agreements of the United States, laws of the United States expressly applicable to the Territory, Executive Orders, or Orders of the Department of Interior. Order 2918, part III § 2. Since this suit was commenced, the system of government has been changed as the Territory moves toward self–government. Pursuant to Secretary of Interior Order No. 3027, September 29, 1978, 43 Fed. Reg. 49858 (Oct. 25, 1978), entitled "Interim transition to governments based on locally developed constitution—

---

1. Under the terms of the Agreement, the United States is required to:

    foster the development of such political institutions as are suited to the trust territory and shall promote the development of the inhabitants of the trust territory toward self–government or independence, as may be appropriate to the particular circumstances of the trust territory and its peoples and the freely expressed wishes of the peoples concerned; and to this end shall give to the inhabitants of the trust territory a progressively increasing share in the administrative services in the territory; shall develop their participation in government; shall give due recognition to the customs of the inhabitants in providing a system of law for the territory; and shall take other appropriate measures toward these ends . . . . .

    Trusteeship Agreement, Article 6(1).

Trust Territory of the Pacific Islands", the legislative authority of the Territory became vested in an Interim Congress of the Federated States of Micronesia, the Palua Legislature, and the Marshall Islands, Nitijela.

Finally, the laws of the United States do *not* automatically apply to the Territory unless they are specifically made applicable by Congress. The government contends in this proceeding that it treats the Territory as a political unit separate and distinct from the United States.

## III. THE TRUST AGREEMENT

We hold that the decision of the district court is legally correct in its result and legal findings. However, before detailing the bases for affirming the district court, it is essential to emphasize one very important fact that greatly influences the determination as to whether the Government of Micronesia is an agency, territory, or possession of the United States. The ultimate fact of importance to this Court is that the entire authority of the United States in the Trust Territory is derived from a *trust.* And, it is clear from II that it is a very unique trusteeship arrangement that differs widely from any of the traditional relationships of governmental entities.

The real authority over the islands remains in the United Nations. For all intents and purposes, the United States acts only as an administrator for a principal. Appellant's position in the case is largely based on overemphasizing the power of the United States in the arrangement and down playing the complete residual control which is permanently vested in the United Nations. Like all trusts, there must be a trustee to supervise the management of the property within the trust. Yet, the authority of the trustee is never any greater than that with which it was endowed by the trust agreement. The task of the United

States under the Trusteeship Agreement at issue is primarily to nurture the Trust Territory toward self–government. Of necessity, some United States' laws could apply in Micronesia during the period of trusteeship, and laws may not be enacted by the Congress of the Trust Territory that are inconsistent with the laws of the United States. To allow otherwise could cause serious difficulties and impediments to the administration of the trust. Yet, if a court were to hold that all laws governing the actions of the United States government toward *its* citizens within the territorial limits of the *United States* should apply in Micronesia, when such extraterritorial effect of our laws is not specifically mandated by the Trusteeship Agreement, it would place the United States by judicial decision in a governmental posture involving the Trust Territory that the United Nations never intended it to occupy.

If one fails to appreciate the true characteristics of this unique relationship for purposes of this case, it is easy to get lost in the intricacies of standard administrative law trying to pigeonhole or label this entity called "Micronesia". However, we believe that if the *trust* aspects of the relationship are properly emphasized, the law as set forth by the opinion of the district court can be applied and affirmed.

## IV. THE TRUST TERRITORY'S NON–AGENCY STATUS

The Freedom of Information Act, 5 U.S.C. § 552, applies to certain "agencies" of the United States as defined in 5 U.S.C. § 551(1).[2] Appellant argues on the basis of the amount and character of control held and exercised by the United States Department of Interior over the government of the Trust Territory that the latter is an "agency" of the United States under the relevant statute. This issue is separate

---

**2.** The pertinent parts of that statute provide:
  For purpose of this subchapter–
    (1) "agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include–

\* \* \* \* \* \*
    (C) the governments of the territories or possessions of the United States . . .
5 U.S.C. § 551(1)(C).

from the issue of whether Micronesia is a territory or possession, as discussed *infra*. Its "agency" status must be determined before any further evaluation of FOIA coverage may proceed.

Gale maintains that the Trust Territory exists not by the will of the local people, but by virtue of United States statutes, Executive Orders, and Department of Interior Orders and that actual and pervasive administrative control of the Territory is exercised by the Department of Interior. As authority for his argument, Gale relies on *Groves v. United States*, 533 F.2d 1376 (5th Cir. 1976), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611, which held that the government of the Trust Territory is an agency of the United States for purposes of 26 U.S.C. § 911. Section 911 is the statute that excludes from gross income that earned income which is received from sources outside the United States, except amounts paid by a United States *agency*. The Fifth Circuit emphasized that even though the end objective of the Trust Territory Agreement was to promote self—government, the United States, as administering authority, is carrying out a United States governmental function directed to the attainment of that objective. 533 F.2d at 1384. Ultimately, Gale argues that whether the Trust Territory is an agency of the United States depends upon the particular statute under review. The FOIA, he contends, should be broadly construed by this Court to cover the government of the Trust Territory.

The decision in *Groves* is *contra* to that in *McComish v. Commissioner of Internal Revenue*, 580 F.2d 1323 (9th Cir. 1978), which discusses the identical issue and the same provision in the Internal Revenue Code, and arrives at an opposite conclusion. The Ninth Circuit discussed all of the facts relative to the establishment of the Trusteeship Agreement, its terms, and the actual management of the government. It concluded that the United States does not "control" the government of the Trust Territory; it is a separate and distinct entity. In *McComish* the Court noted that the United States cannot dissolve the trusteeship as an entity

nor change the Territory's status without the consent of the Trusteeship Council of the United Nations. *Id.* at 1330. As in our part II, the Ninth Circuit recognized the trust status which is basic to this arrangement. Thus, the Ninth Circuit concluded that the government of the Trust Territory is not an agency of the United States.

The government relies on *McComish*, and similarly places a gloss on the status of the Trust Territory as being "quasi–sovereign". However, the most important point on which the government's argument differs from Gale's is that even though the United States government may be exercising its role under the statute and Trusteeship Agreement in supervising the Trust Territory, it is actually carrying out the collective will of the Micronesians, not that of the government or citizens of the United States. We find this point to be persuasive. Even though the United States government is the instrumentality of administration and supervision (with ultimate supervision in the United Nations), that role by the United States is totally incidental, since the objective of the trust is to assist the Micronesians, none of whom are United States citizens.

The other case relied upon by the government is *Porter v. United States*, 496 F.2d 583 (Ct.Cl.1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975). The Trust Territory, while it was being administered under the Trusteeship Agreement, had entered into and breached a contractual agreement. Thereafter, the private contracting party attempted to hold the United States to the contract arguing that the Territory was an *agency* of the United States. The Court of Claims reviewed the Trusteeship Agreement, pointing out that its purpose was to foster self–government and self–sufficiency of the Micronesians, under the supervision of the United Nations.

While the United States has retained direct control in certain fields, such as foreign affairs, the daily administration of the islands has largely shifted into the hands of the local government. The Ter-

ritory operates under its own comprehensive legal code. Inhabitants of the islands are citizens of the Territory, not of the United States.

\*    \*    \*    \*    \*    \*

In the framework of several statutory schemes, however, the courts have consistently held the Trust Territory to be either a "foreign country" or something other than a "federal agency". [Citations omitted]

*Id.* at 588–89. An essential point for the Court of Claims was that the contracting officials of the Trust Territory, even though paid through federal funds, held positions established as offices of the Trust Territory, not of the United States.

The reasoning of the *Porter* court is applicable here. The officials of the Trust Territory government, the subjects of this FOIA action, are only empowered to act with respect to local matters. It is conceded by all that the Department of Interior must hand over documents it holds regarding this FOIA request. In fact, it did disclose all the documents from its files pertaining to Gale. However, the compulsion of the FOIA does not extend to the separate files of the Trust Territory government, performing purely local governmental functions for non–United States citizens. Although the Trust Territory is supervised by the Department of Interior, it never became associated with the Department and never became an instrumentality of the United States government.

For the foregoing reasons, we find that the government of the Territory is not an *agency of the United States*. Therefore, it is not an "agency" under the definition of an "agency" in the Administrative Procedure Act, 5 U.S.C. § 551(1).

## V.   THE EXEMPTION FOR GOVERNMENTS OF TERRITORIES OR POSSESSIONS

The district court next held that even assuming the Trust Territory is an agency of the United States, it is exempt under § 551(1)(C), which exempts the governments of territories or possessions of the

United States from coverage under the Administrative Procedure Act (APA). *See* note 2, *supra.* The parties agree that the Trust Territory is not technically a territory or possession of the United States, since under the Trusteeship Agreement this country is not vested with sovereignty over the Territory.

We agree with the conclusion of the district court, largely on the basis of our interpretation of the congressional intent indicated by the legislative history of the Administrative Procedure Act. Various comments in that history explain that the Act does not specify all the agencies to be exempted by name, but rather by functional classifications. The report of the House Judiciary Committee explained that "[w]here one agency has been able to demonstrate that it should be exempted, all *like* agencies have been exempted in general terms." H.R.Rep. No. 1980, 79th Cong., 2d Sess. 16 (1946) (emphasis added). Senator McCarran, Chairman of the Senate Judiciary Committee, also explained that the "committee has not deviated from the policy of dealing with types of functions as such, and the bill in no case deals with administrative agencies by name." 92 Cong.Rec. 2150 (1946). The conclusion then follows that if it be admitted that the Trust Territory is virtually identical to the territories and possessions in which the United States is sovereign, it should likewise be exempt from APA coverage.

The Ninth Circuit addresses this issue as it applies to the Trust Territory in *People of Saipan v. Department of Interior,* 356 F.Supp. 645 (D.Haw.1973), *aff'd as modified on other grounds,* 502 F.2d 90 (9th Cir. 1974), *cert. denied,* 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975). Inhabitants of the Territory attempted to enjoin an action of the Territory's High Commissioner in which he had not followed certain requirements of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.* The district court dismissed the suit, holding that the Trust Territory was exempt from APA review under the territory or possession exemption. Both the District Court

and the Ninth Circuit held that the fact that the United States does not technically have sovereignty is an immaterial distinction, or a distinction without a difference, because, since the Congress intended to exclude like agencies, the Trust Territory should be excluded under § 551(1)(C).[3]

The similarities of the Trust Territory to the typical territories and possessions of the United States are self–evident. Appellee explains that the Trust Territory was established in the same manner as American Samoa, it has a structure like most territorial governments and has a similar kind of control and supervision from the United States. For example, Guam is supervised by the Department of Interior, and Congress may annul its laws. It would thus be highly inconsistent to for this Court to hold that territories and possessions are exempt, but the Trust Territory is not, when the latter is more removed from substantial control by the United States than most territories and possessions, and is on the road to self–government. Therefore, we find that the Trust Territory is "like" territories and possessions of the United States and is exempt from coverage under § 551(1)(C) of the Freedom of Information Act.[4]

## VI. LACK OF SPECIFIC STATUTORY INCLUSION

Independent of the rationales in IV and V, the Trust Territory should not be required to comply with the APA or the FOIA because neither statute specifically or implicitly covers it. According to Article 3 of the Trusteeship Agreement, the United States "may apply to the trust territory

**3.** This Court cited the holding in *Saipan v. Department of Interior* in *Ralpho v. Bell,* 569 F.2d 607, 616 n. 54 (D.C.Cir. 1977), when it stated that the "Administrative Procedure Act's definition of that term excludes territorial governments, 5 U.S.C. § 701(b)(1)(C) (1970) [the section defining terms for the judicial review portion of the APA], including that of the Trust Territory. See *Saipan v. Department of Interior, . . . Cf. Porter v. United States, . . . .*" We then held that the Micronesian *Claims Commission is* an authority of the United States that is unconnected with the Territorial Government. Although this quoted statement in *Ralpho* is dicta, we find it is persuasive as indicating the manner in which the Court has characterized the status of Micronesia on a prior occasion.

**4.** Appellant Gale presents a very confusing argument by trying to apply our holding in *Pickus v. United States Board of Parole,* 507 F.2d 1107 (D.C.Cir. 1974) to the instant case. In *Pickus* we reviewed whether the Board of Parole is an agency under the APA and found that none of the exclusions of § 551(1)(A–H) embraced the Board. We emphasized that the Act did not exclude agencies by name, but rather by functions, and "such functions as this case presents were not exempted". 507 F.2d at 1111. We then proceeded to show the legislative history of the APA runs counter to the Board's rationale, since the bill as originally proposed specifically exempted the Department of Justice. The Act, however, contains no such exemption for either the Department or the functions it performs. Finally, this Court held:

We find unpersuasive an argument of the Board that it is exempt because the Probation Service is exempt. The exemption of the latter is warranted not by the functions it performs as the Board suggests, but by its status as an auxiliary of the courts, which, unlike agencies of the executive branch, are specifically excluded.

*Id.* at 1112.

Gale maintains that *Pickus* is a statement by this Court that it will not exclude agencies from APA coverage because they are "like" organizations which are expressly excluded. We find that Gale is reading far too much into a very distinguishable opinion. First, the Court never specifically stated what Gale attributes to it. Second, in *Pickus* there was substantial legislative history that indicated a congressional intent to specifically exempt the Department of Justice. In the instant case, the Trust Territory was never mentioned in the legislative history of the APA, since the APA became effective in 1946 one year *before* the Trusteeship Agreement was executed. We can only assume that had it existed, reason would hold that the Congress would have included it within the exemption. However, rather than having to amend the FOIA when each new governmental entity comes into existence, the drafters opted for exempting all "like" agencies to those specifically exempted. Finally, the *Pickus* court did not specifically hold that the Probation Service could *not* be exempt because it performs like functions to the courts (which are exempt under § 551(1)(B)), but that in this case the Service was exempt because it was an auxiliary to the courts.

Because *Pickus* is clearly distinguishable we find that it does not preclude exempting the Trust Territory under 5 U.S.C. § 551(1)(C).

. . . such of the laws of the United States as it may deem appropriate to local conditions and requirements." The District Court of Hawaii interpreted this to mean that Congress must manifest an intent either within the statute or in the legislative history to include the Trust Territory for it to be covered. *People of Enewetak v. Laird*, 353 F.Supp. 811, 815 (D.Haw.1973). As noted by the district court in the instant case, neither the legislative history of the APA nor the FOIA makes *any* reference to the Trust Territory. The FOIA was enacted long after the Trusteeship Agreement was executed, and the APA definition of "agency" has been amended subsequent to the Agreement. Yet, to this day both are silent as to the Trust Territory and governmental entities with its characteristics.

Finally, as explained in V, the fact that Congress excluded the governments of territories and possessions specifically evidences a strong intent to exclude that of the Trust Territory. We are mindful throughout this opinion that the government of the United States acted toward Micronesia *only as a trustee.* As such, it is fully consistent to hold, as did the United States District Court for Hawaii, that the laws of the United States could only apply to the Trust Territory if Congress had expressly so provided in the statute. We will not assume that the United States' laws apply *holus–bolus* to a separate and distinct territorial government that is striving toward self–government under the stewardship of this nation. To do so would be to ignore entirely the purpose and limitations of the Trusteeship Agreement.

For the foregoing reasons, we affirm the District Court.

*Judgment Accordingly.*

OBERDORFER, *District Judge, concurring*:

I agree that the Trust Territory of the Pacific Islands is sufficiently "like" a Territory of the United States to qualify it for exemption by operation of Section 551(1)(C) of the Freedom of Information Act, even though for many other purposes the Trust Territory may not be "like" a United States Territory. Accordingly, I concur in the result.