**In re James H. GILBERT, Respondent.**

**No. 86–1614.**

District of Columbia Court of Appeals.

Argued Dec. 1, 1987.

Decided March 7, 1988.

David Epstein, with whom R. Hale Foote, Washington, D.C., was on the response to the order to show cause, for respondent.

Fern Flanagan, Asst. Bar Counsel at the time this case was argued, with whom Thomas E. Flynn, Bar Counsel, and Wallace E. Shipp, Jr., Deputy Bar Counsel, Washington, D.C., were on the reply to the response of respondent to the show cause order, for petitioner, the Office of Bar Counsel.

Before PRYOR, Chief Judge, and NEWMAN and BELSON, Associate Judges.

PER CURIAM:

In this professional responsibility case, we must determine whether respondent James H. Gilbert should be reciprocally disciplined in this jurisdiction, pursuant to District of Columbia Bar Rule XI, § 18(5), as a consequence of his disbarment by the Court of Appeals of Maryland on October 6, 1986. *Attorney Grievance Comm'n of Maryland v. Gilbert*, 307 Md. 481, 515 A.2d 454 (1986). The Board on Professional Responsibility has recommended that reciprocal discipline be imposed and that, accordingly, respondent be disbarred. In opposition to that recommendation, respondent offers four reasons, which correspond to those listed in Rule XI, § 18(5)(b)–(e), why this court should not impose discipline identical to that imposed by the Court of Appeals of Maryland. We conclude that respondent should be reciprocally disciplined and, thus, disbarred from the practice of law in the District of Columbia.

The basis for this reciprocal discipline proceeding is respondent's disbarment in Maryland for violations of DR 1–101(A) and DR 1–102(A)(1) and (4).[1] The factual cir-

---

1. DR 1–101(A) states:
   (A) A lawyer is subject to discipline if he has made a materially false statement in, or he has deliberately failed to disclose a material fact requested in connection with, his application for admission to the bar.

cumstances surrounding respondent's violations are reported at length in *Attorney Grievance Comm'n of Maryland v. Gilbert, supra.* As pertains to this proceeding, the factual background is as follows: in May 1980, respondent completed his application for admission to the Maryland Bar. Included in the application was a question (Question 10) which requested the following information:

a complete list of all suits in equity, actions at law, suits in bankruptcy or other statutory proceedings, matters in probate, lunacy, guardianship, and every other judicial or administrative proceedings of every nature and kind to which [the applicant is] or [was] ever ... a party: (If 'None' so state).

In response to the question, respondent answered "[n]one." By submitting a negative answer, respondent in effect failed to disclose the fact that in 1970 he had been involved as a plaintiff in a civil suit brought against Bankers Life and Casualty Company.

After passing the Maryland Bar Examination, respondent underwent the character investigation process—the purpose of which was to determine whether his moral character made him fit for admission to the Maryland Bar. The investigation of respondent included a hearing by the Character Committee of the Third Judicial Circuit. As he had done on the admission application, respondent failed during the investigation process to disclose any information revealing his prior involvement in the *Bankers Life* action.[2]

The 1970 *Bankers Life* suit arose out of respondent's attempt to recover proceeds from two insurance policies which had provided coverage on his wife's life. The effort to collect on the insurance policies came after respondent's wife was murdered in June 1967. Respondent and his sister were arrested in connection with the killing and indicted for murder and conspiracy to commit murder. However, after respondent's sister was acquitted of the charges in March 1972, the state voluntarily dismissed the charges against respondent. Gilbert then sought, as a beneficiary, to recover the proceeds of the insurance policies. Those proceeds totalled $110,000. Bankers Life and Casualty Company refused to make payment, contending that respondent had intentionally caused his wife's death. Respondent, in turn, filed suit against Bankers Life. Following a non-jury trial, the court denied respondent's claim. In making its finding, the trial court declared "the evidence [to be] overwhelming that [respondent] intentionally caused the death of his wife in order to reap the harvest, namely, the proceeds of these two life insurance policies...." *Attorney Grievance Comm'n, supra,* 307 Md. at 486, 515 A.2d at 456.

Respondent's nondisclosure of the *Bankers Life* civil suit never became known to Bar authorities during the admission process. The Character Committee was aware, however, not only that respondent had prior criminal convictions but also that he had been indicted for the murder of his wife.[3] Nevertheless, and notwithstanding

DR 1–102(A)(1) and (4) state:
(A) A lawyer shall not: (1) Violate a Disciplinary Rule.... (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

2. In the course of respondent's subsequent disbarment proceedings in Maryland, that state's court of appeals noted that "Gilbert never provided the information about *Bankers Life* during the admission process." *Attorney Grievance Comm'n, supra,* 307 Md. at 494, 515 A.2d at 460.

3. In fact, during the course of the admission process, there was a "concentration on [respondent's] criminal record." *Id.* at 490, 515 A.2d at 458. That record, apart from the matter of the death of his wife, was summarized in the Report

of the Board on Professional Responsibility as follows:

During a six month period in 1967, when he was just beginning law school, Gilbert was involved in a series of criminal acts in Maryland. He was charged with conspiracy to commit forgery, forgery and uttering, murder and accessory to commit murder, homocide [sic] and assault. He entered a nolo contendere plea to the conspiracy to commit forgery charge and received a suspended sentence. He was also found guilty of six counts of forgery and uttering and was sentenced to imprisonment for a period of 20 months to 5 years. He was later found not guilty of murder charges arising from a gas station robbery but entered a nolo contendere plea to simple

a unanimous recommendation by a Character Committee of the Maryland State Board of Law Examiners (the "State Board") to deny respondent admission to the Bar, the State Board voted 3–2 to recommend his admission. The Court of Appeals of Maryland, in a divided decision, ordered respondent's "admission after concluding that the evidence was clear and convincing that he was completely rehabilitated and presently possessed good moral character." *Id.* at 485, 515 A.2d 456 (citing *In re Application of James G.*, 296 Md. 310, 462 A.2d 1198 (1983)).

A short time after respondent's admission to the Maryland Bar in 1983, the Maryland Attorney Grievance Commission (the "Commission") became aware of his previous involvement in the *Bankers Life* suit and his failure to disclose that involvement in his bar admission application. The Commission commenced disciplinary proceedings against respondent on the basis that he "had intentionally failed to disclose a material fact by his negative answer to Question 10 of the admission application...." *Id.* 307 Md. at 487, 515 A.2d at 457. Respondent's failure to disclose the information about the civil suit was, the Commission contended, a violation of DR 1–101(A) and DR 1–102(A)(1) and (4). The Circuit Court for Anne Arundel County conducted two evidentiary hearings regarding the alleged violations. That court concluded that

> [Respondent] had intentionally failed to disclose the civil suit; that the information thereby withheld was of material fact; that the Character Committee, the State Board of Law Examiners, and [the

Court of Appeals of Maryland] were deliberately deprived of material information; and that [respondent] had thereby violated DR 1–101(A) and DR 1–102(A)(1) and (4).

*Id.*

The Court of Appeals of Maryland refused to disturb either the factual findings or the ultimate determination of the circuit court. In its 1986 decision, the court of appeals stated that it was "unable to say that [the circuit court's] finding that [respondent] intentionally failed to disclose the *Bankers Life* suit was clearly erroneous." *Id.* at 490, 515 A.2d at 458. Moreover, the court of appeals concluded, as did the circuit court, that the *Bankers Life* information which respondent failed to disclose was "material." *Id.* at 492, 515 A.2d at 460. The court of appeals also declared that it was "entirely plain" that "the nondisclosure of the civil suit plainly inhibited efforts to assess [respondent's] present moral character fitness to practice law." *Id.* Finally, citing to the "gravity of [the] misconduct, and the absence of any compelling extenuating circumstances," the court ruled that respondent should be disbarred. *Id.* at 498, 515 A.2d at 463.

After receiving notice of the decision in Maryland to disbar respondent, we referred the matter to the Board on Professional Responsibility (the "Board") for a recommendation on whether we should impose reciprocal discipline. The Board determined that none of the extenuating elements set forth in D.C. Bar R. XI, § 18(5) are present in the instant case.[4] Finding

---

assault for which he received a suspended sentence. None of these arrests, convictions or sentences is directly involved in this case.

**4.** Unless one or more of five factors, listed in D.C. Bar R. XI, § 18(5), is found clearly to exist, members of the District of Columbia Bar who have been disciplined in another jurisdiction are required to be identically disciplined by this court. Section 18(5) provides:

Discipline to be imposed. Upon the expiration of 30 days from service of the notice *issued* pursuant to the provisions of paragraph (3) above, this Court shall impose the identical discipline unless Bar Counsel or the attorney demonstrates, or the Court finds

upon the face of the record upon which the discipline is predicated, that clearly:

(a) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(b) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistent with its duty, accept as final the conclusion on that subject; or

(c) The imposition of the same discipline by the Court would result in grave injustice; or

(d) The misconduct established warrants substantially different discipline in this jurisdiction; or

no basis upon which to recommend against the imposition of identical discipline, the Board has recommended that respondent be disbarred in this jurisdiction.

## I

The first argument that respondent presents in opposition to reciprocal disbarment, based on D.C. Bar R. XI, § 18(5)(b), is that there was an "infirmity of proof" establishing the misconduct at issue. In support of this contention, respondent asserts that the discipline in Maryland was based on the findings made in the *Bankers Life* civil action; however, he maintains, those findings are "contradicted" by the fact that the criminal proceedings against him were dismissed. Furthermore, respondent states, it is improbable that he would intentionally fail to provide information about the *Bankers Life* action when his disclosure of the criminal matter already served to spotlight the entire episode. It would have been self-destructive, the argument goes, to reveal the criminal matter and then attempt to conceal the closely connected civil proceeding. Finally, in further assailing the finding of misconduct, respondent states that he satisfied the Maryland standard for disclosure of information on a bar application, as it is set forth in *In re Application of G.L.S.*, 292 Md. 378, 397, 439 A.2d 1107, 1117 (1982).

▉ We find no infirmity in the Maryland court's determination of misconduct. We reiterate that the misconduct at issue is not a homicide, but the intentional nondisclosure on the bar application of information considered to be material. As to the proper weight to be given the findings in the *Bankers Life* action vis-a-vis the results of the criminal proceedings, that is a concern which goes only to the question of whether the nondisclosed information was "material." We agree with the statement by the Court of Appeals of Maryland:

Also lacking in merit is [respondent's] contention that the finding of materiality in the disciplinary proceedings effectively convicts him of his wife's murder and thus denies him due process of law. Our determination that the nondisclosure was material relates only to [respondent's] fitness to practice law, not to his guilt or innocence.

*Attorney Grievance Comm'n, supra,* 307 Md. at 495, 515 A.2d at 461. The Maryland disciplinary proceedings did not focus on the ultimate finding in the *Bankers Life* action. Rather, the Maryland Court of Appeals ruled the *Bankers Life* suit to be material because the civil action brought information to light that would have been "highly relevant" to the assessment of respondent's "moral character fitness to practice law." *Id.* at 493, 515 A.2d at 460. We cannot disagree with the conclusion that the *Bankers Life* information would have been highly relevant. Consequently, we find no fault with the determination of materiality.

Moreover, we are unpersuaded by respondent's challenge to the Maryland court's conclusion that respondent intentionally failed to disclose the information. Respondent argues that he focused attention on the circumstances surrounding the murder charges by disclosing his criminal indictment and that, therefore, any intentional coverup of the civil action would surely be unsuccessful. We disagree. Respondent stood to benefit if the existence and, in particular, the findings of the civil action were never revealed. The Maryland circuit court noted that respondent "controlled the flow of information during the [Character Committee] hearings." *Id.* at 490, 515 A.2d at 458. Respondent now argues, however, that he could not have hoped to keep the *Bankers Life* action undisclosed. We find this position inconsistent with respondent's failure to mention the civil proceedings even when responding to questions posed during the informal Character Committee proceedings, that virtually invited such a disclosure. *Id.* In short, we are unable to find any infirmity

(e) The misconduct elsewhere does not constitute misconduct in the District of Columbia. If the Court determines that any of those elements exists, the Court shall enter such order

as it deems appropriate, including referral of the matter to the Board for its further consideration and recommendation.

in the determination that the nondisclosure was intentional.

Respondent's final challenge to the determination of misconduct is that he was held to a higher standard of disclosure than was the applicant in *In re Application of G.L.S., supra.* The Maryland Court of Appeals distinguished the two cases, and we too are satisfied that respondent disclosed less information than that which was disclosed in *G.L.S.* As with respondent's other two contentions, this last point provides no grounds upon which to question the conclusion of the Maryland court that the actions of respondent constituted misconduct.

## II

■ The second argument that respondent levels against the imposition of reciprocal discipline is made pursuant to D.C. Bar R. XI, § 18(5)(c). He contends that a "grave injustice" would result if he should be reciprocally disbarred in the District of Columbia because our action would be based on disciplinary proceedings in Maryland which came about, according to him, only as a result of findings in the *Bankers Life* case which are inconsistent with the later dismissal of the criminal charge of murder. We find this argument to be meritless. The Court of Appeals of Maryland disbarred respondent because of his intentional failure to disclose material information on his application to the Maryland Bar rather than because of the findings in the civil case. Our determination, in turn, proceeds on the basis of Maryland's finding of misconduct. We conclude that disbarment of respondent in this jurisdiction would not result in a grave injustice.

## III

■ Respondent argues that disbarment in this jurisdiction is not warranted on the basis of the type of misconduct established in Maryland. We agree instead with the Board on Professional Responsibility that respondent's misconduct would not warrant substantially different discipline if it arose originally in this jurisdiction. The only fully adjudicated case in this jurisdiction that presented a similar situation was *Carver v. Clephane,* 78 U.S.App.D.C. 91, 137 F.2d 685 (1943), in which the appellant was denied admission to the District of Columbia Bar for making responses on his admission applications which were found to be deceitful. Candid answers would have led the Committee on Admissions and Grievances to investigate findings that Carver had been guilty of misconduct before the United States Patent Office. The exclusion of the respondent in *Carver* from the bar for his failure to be candid on his admission applications is not dissimilar from respondent's disbarment for misconduct involving the intentional nondisclosure of material information during the admission process.[5] Finally, we note that the Maryland court, in considering sanction, found "the absence of any compelling extenuating circumstances." *Attorney Grievance Comm'n, supra,* 307 Md. at 498, 515 A.2d at 463. We believe the misconduct does not warrant substantially different discipline from that imposed in Maryland.

## IV

■ Respondent also argues that his actions in Maryland would not have constituted misconduct in the District of Columbia because this jurisdiction would have required "a clearer showing of intent to make a misstatement." In that we see no basis for disregarding the factual findings made during respondent's disciplinary proceedings in Maryland, we conclude that the Maryland proceedings sufficiently established that respondent had intentionally failed to disclose the *Bankers Life* information. Accordingly, it is

ORDERED that James H. Gilbert be, and hereby is, disbarred from the practice

---

**5.** *The Board on Professional Responsibility observed that it had recommended a sanction of a year and a day in a case arising in this jurisdiction (still pending before this court) in which an applicant was found to have made misrepresentations less serious than Gilbert's in applying for admission to the Maryland Bar. In re Rosen, Bar Docket No. 187–85 (Oct. 9, 1986) (D.C.C.A. No. 86–1464).*

of law in the District of Columbia effective thirty days from the date of this opinion.

*So ordered.*