**In re David Baldwin WEBSTER, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**Nos. 92–BG–1337, 93–BG–43.**

District of Columbia Court of Appeals.

Argued May 25, 1995.
Decided June 22, 1995.

Julia L. Porter, Asst. Bar Counsel and Leonard H. Becker, Bar Counsel, for the Bd. on Professional Responsibility.

David B. Webster, pro se.

Before TERRY and FARRELL, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

 In this attorney disciplinary case, we determine whether respondent, David B. Webster, may receive reciprocal discipline in this jurisdiction, pursuant to District of Columbia Bar Rule XI, § 11, based upon his disbarment from the practice of law in Palau, a Trust Territory located in the Pacific Islands. At the outset, we note that respondent was required, pursuant to this court's order dated March 28, 1994,[1] to apprise us of the status of his appeal from the Palauan disbarment order which had been pending before the Appellate Division of the Supreme Court of Palau. Respondent instead filed a motion for leave to resign as a member of the Bar of the District of Columbia, which was later denied by this court.[2] In its opposition to respondent's motion, Bar Counsel submitted a copy of an opinion dated May 10, 1994, from the Appellate Division of the Supreme Court of Palau, dismissing respondent's appeal from the disbarment order. In this opinion, the Palauan court held that "no appeal can be had to the Appellate Division of the Supreme Court from a Disciplinary Tribunal decision." *In re Webster,* Civil Appeal No. 20–92, Supreme Court of Palau (App.Div. May 10, 1994). Relying upon Palau's Disciplinary Rule 5(k), which provides that "the decision of the Disciplinary Tribunal shall be final," the Palauan court explained that the finality of a Disciplinary Tribunal's decision is due to the limited number of judges available to hear cases in Palau. *Id.* at 2. Since three of the four Palauan Supreme Court justices are selected to sit on the Disciplinary Tribunal, an appeal from the Tribunal's decision "would result in the appeal being heard by many, if not all, of the same judges who sat as members of the Disciplinary Tribunal." *Id.* With the appealability issue of the Palauan disbarment order having been resolved,[3] we turn to the merits of respondent's reciprocal discipline case.

Based upon respondent's misconduct in Palau, the Board on Professional Responsibility (Board) recommends the imposition of reciprocal discipline against respondent. Respondent, however, contends that reciprocal discipline cannot be applied here because Palau is not a "territory or possession of the United States" as provided in the District's Rules.[4] Respondent also asserts due process violations with respect to the disciplinary proceedings in Palau and claims generally that imposition of reciprocal discipline would result in grave injustice. We conclude that the District's Rules are applicable to respon-

---

1. In this order, we stayed further proceedings in this reciprocal disciplinary matter so that respondent could complete whatever appellate rights were available to him in the Supreme Court of Palau. This order was contingent upon respondent notifying us within forty-five days from the date of the order of his efforts to prosecute that appeal diligently.

2. An attorney will not "avoid imminent disciplinary review by filing a voluntary resignation on the eve of the commencement of an investigation or disciplinary proceeding." *In re Phillips,* 452 A.2d 345, 348 (D.C.1982) (per curiam); *see In re Meisnere,* 471 A.2d 269, 271 (D.C.1984) (per curiam); D.C.Bar R. II, § 7.

3. On September 21, 1994, the Trust Territory High Court for the Trust Territory of the Pacific Islands denied respondent's petition for Writ of Certiorari.

4. *See* D.C.Bar R. XI, § 11(a).

dent's case, and that reciprocal discipline is warranted under these circumstances.

## I.

The present case involves disciplinary violations which initially occurred in the State of Florida and the Trust Territory of Palau in the Pacific Islands. Although the basis for the Board's recommendation of respondent's disbarment rests upon his disciplinary violation in Palau, it is necessary that we also discuss his conduct in Florida which led to the instant proceedings.

In May 1990, the Supreme Court of Florida found that respondent, a member of the Florida and District of Columbia Bars, violated its disciplinary rules and consequently suspended him from practicing law in Florida for eighteen months.[5] Respondent's violations included misappropriation of client funds and a failure to promptly distribute such funds. Respondent did not report these ethical violations to the District of Columbia Office of Bar Counsel (Bar Counsel) as required by Rule XI, § 11(b).[6] Following the submission of respondent's petition for reinstatement to the Florida Bar, in May of 1992, the Florida Bar notified the District regarding respondent's violations. Shortly thereafter, Bar Counsel forwarded a letter to respondent which indicated the matter would be referred to this court for reciprocal discipline. In his letter of response to Bar Counsel, respondent admitted the disciplinary violations in Florida and explained the rehabilitative measures which he had undertaken in order to ensure his reinstatement to the Florida Bar. Respondent also mentioned that, subsequent to his suspension in Florida, he had obtained a special prosecutor position in the Trust Territories of the Pacific Islands.

On November 16, 1992, this court suspended respondent and ordered him to show cause why identical discipline should not be imposed against him based upon his misconduct in Florida. In addition, the Board was ordered to recommend to this court whether reciprocal discipline should be imposed against respondent or whether the Board elected to conduct a *de novo* proceeding pursuant to Rule XI, § 11. Following this court's order, Bar Counsel discovered that respondent had been the subject of disciplinary action in Palau. With the knowledge of this subsequent disciplinary sanction against respondent, Bar Counsel requested the Board to defer further action on the reciprocal disciplinary proceedings which were already pending against him based upon his misconduct in Florida. This request was granted, and Bar Counsel obtained a copy of the order entered by the Supreme Court of Palau which disbarred respondent.

The disbarment order from Palau indicated that at the time respondent applied for membership in the Palau Bar, he informed Palau that he was a member in good standing of the District of Columbia Bar, but mentioned neither his membership in the Florida Bar nor the disciplinary violations against him in Florida.[7] After learning of respondent's disciplinary violations in Florida, the Supreme Court of Palau appointed Disciplinary Counsel to investigate the matter. On September 14, 1992, Disciplinary Counsel discovered that respondent had left the Republic of Palau, but an employee at respondent's office expected him to return by September 22, 1992. With respondent's whereabouts still unknown, on October 9, 1992, Disciplinary Counsel filed a formal complaint against respondent for misrepresenting and concealing a material fact on his application to the Palau Bar. Disciplinary Counsel forwarded, by certified mail, a copy

---

**5.** Respondent's eighteen-month suspension ran concurrently with a ninety-day suspension which was also ordered against him. In addition, respondent was placed on probation for two years and required to furnish proof of rehabilitation before his reinstatement.

**6.** "[A]ny attorney subject to the disciplinary jurisdiction of this Court, upon being subjected to professional disciplinary action by a disciplining

court outside the District of Columbia or by another court in the District of Columbia, shall promptly inform Bar Counsel of such action." D.C.Bar R. XI, § 11(b) (1994).

**7.** Respondent's disciplinary violations were made known to Palau by the Florida Bar which, at the time, was considering his petition for reinstatement.

of the complaint, along with a notice of a disciplinary hearing scheduled for November 9, 1992, to respondent's office address in Palau and his last known address in Florida. On that same day, respondent forwarded a letter by telefax to Disciplinary Counsel indicating that he could be contacted through his attorney in Florida. Following this correspondence, Disciplinary Counsel telefaxed a copy of the complaint and notice of hearing to respondent's attorney. However, respondent's counsel replied that he was not authorized to accept service. On November 4, 1992, respondent informed Disciplinary Counsel that he had received a copy of the complaint on October 25, 1992. Respondent failed to appear at the disciplinary hearing. At the conclusion of the hearing, it was determined that respondent violated Palau's disciplinary rule which proscribes an attorney from misrepresenting or concealing a material fact in his application for admission to the Palau Bar.

In light of this subsequent misconduct in Palau, we issued a show cause order requiring respondent to demonstrate to the Board why reciprocal discipline should not be imposed against him. In his reply, respondent specifically contends that Palau, a Trust Territory, is not a "territory" which is subject to the District's reciprocal disciplinary rules. The relevant section of the District's reciprocal discipline rules provides:

> As used in this section, "disciplining court" shall include any court of the United States as defined in Title 28, Section 451 of the United States Code, the highest court of any state, territory, or possession of the United States, and any other agency or tribunal with authority to disbar or suspend an attorney from the practice of law in any state, territory, or possession of the United States.

D.C.Bar R. XI, § 11(a).

In addition, respondent asserts he was not afforded proper notice and an opportunity to be heard with respect to the disciplinary proceedings in Palau and that the imposition of reciprocal discipline would result in grave injustice as noted in our Rule XI, § 11(c)(3).

## II.

In reviewing respondent's contention that his disciplinary violations in Palau cannot serve as the basis for reciprocal discipline in the District, we initially address the status of Palau and its judicial institutions. The international agreement under which the Trust Territory of Palau was established has been explored extensively by this federal circuit's opinion in *Gale v. Andrus,* 207 U.S.App.D.C. 76, 643 F.2d 826 (1980). Palau is a region located within Micronesia.[8] Under the Trusteeship Agreement which was entered into between the United States and the United Nations Security Council, "the United States became the 'administering authority' and accepted administrative responsibility for the people of Micronesia."[9] *Id.* at 78, 643 F.2d at 828. As an administrative authority, "[t]he United States received powers of administration, legislation, and jurisdiction over the territory subject to the provisions of the [Trusteeship] Agreement." *Id.* at 78–79, 643 F.2d at 828–29. This administrative responsibility was delegated to the Department of the Interior, which subsequently "established a local government in Micronesia consisting of executive, legislative and judicial branches." *Id.* at 79, 643 F.2d at 829. Although the Trusteeship Agreement has been dissolved with respect to the Northern Mariana Islands, the Federated States of Micronesia, and the Republic of the Marshall Islands, we take judicial notice that the agreement was operative at the time this case was presented to this court. *See* UNITED STATES DEPARTMENT OF INTERIOR, TERRITORIAL AND INTERNATIONAL AFFAIRS, FACT SHEETS, UNITED STATES INSULAR AREAS, TRUST TERRITORY OF THE PACIFIC ISLANDS, FREELY ASSOCIATED STATES at 8–45 (1993); *see also Temengil v. Trust Territory of Pacific Islands,* 881 F.2d 647, 650 (9th Cir. 1989).

---

8. *See Bowoon Sangsa Co. v. Micronesian Indus. Corp.,* 720 F.2d 595, 599 (9th Cir.1983).

9. The area known as "Micronesia" encompasses "over 2,000 islands and atolls in the western Pacific Ocean, including the Eastern and Western Caroline Islands, and the Marshall Islands." *Gale, supra,* 207 U.S.App.D.C. at 78, 643 F.2d at 828.

Respondent's assertion that a Trust Territory is not wholly a territory of the United States is partially accurate. *See Gale, supra,* 207 U.S.App.D.C. at 82, 643 F.2d at 832 ("Trust Territory is not technically a territory or possession of the United States, since under the Trusteeship Agreement this country is not vested with sovereignty over the Territory"); *see also People of Saipan v. United States Dep't of Interior,* 502 F.2d 90, 95 (9th Cir.1974) ("United States is a trustee rather than a sovereign"), *cert. denied,* 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975). However, this fact is not dispositive of whether such a Trust Territory should be viewed as a "territory" within the meaning of the District's reciprocal discipline rules. Due to the unique nature of a Trust Territory, it has not been uncommon for federal courts to treat a Trust Territory government as a territorial government in the context of some statutes, and a foreign government in the context of other statutes. *See Temengil, supra,* 881 F.2d at 651 (citing *People of Saipan, supra,* 502 F.2d at 94–95, and *McComish v. Commissioner,* 580 F.2d 1323, 1330 (9th Cir. 1978), respectively). Thus, federal courts have recognized that the "United States is largely responsible for the law to be applied by the Palauan courts. The High Court is required to apply the rules of American common law, and 'such laws of the United States as shall, by their own force, be in effect in the Trust Territory....'" *Bowoon Sangsa Co., supra* note 8, 720 F.2d at 601 (quoting 1 Trust Territory Code §§ 101, 103). Moreover, the Secretary of the Interior is authorized to "appoint[ ] the Chief Justice and Associate Justices of the High Court." *Gale, supra,* 207 U.S.App.D.C. at 79, 643 F.2d at 829; *see also Bowoon Sangsa Co., supra* note 8, 720 F.2d at 601.

Contrary to respondent's view, the application of the District's reciprocal discipline rules to his case is also supported by the language found in Rule 3 of Palau's Rules of Admission. This rule provides:

> Any attorney who is a salaried employee of the Republic of Palau National Government, or any state [sic] government of the Republic of Palau, ... or the Trust Terri-

tory Government may practice law in Palau ... so long as the attorney is acting within the scope of his or her employment and maintains membership in good standing in the bar of any state, territory, or possession of the United States.

It is significant that Rule 3 is quoted in the Findings portion of the Supreme Court of Palau Order disbarring respondent.

In light of the nexus between the judiciary of the United States and that of Palau, the fact that the justices of the Palauan High Court are appointed by the Secretary of the Interior of the United States, and the language provided in Palau's Rules of Admission, we find no valid reason for not treating this Trust Territory as a "territory," within the meaning of Rule XI, § 11(a). Therefore, we may properly consider respondent's misconduct in Palau in determining whether reciprocal discipline should be imposed against him.

### III.

■ This court, as well as others, recognizes that disciplinary proceedings are quasi-criminal in nature and therefore, "an attorney who is the subject of such proceedings is entitled to procedural due process safeguards." *In re Williams,* 464 A.2d 115, 118–19 (D.C.1983) (per curiam) (citations omitted); *see also In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968); *In re Thorup,* 432 A.2d 1221, 1225 (D.C.1981); *Charlton v. FTC,* 177 U.S.App. D.C. 418, 421; 543 F.2d 903, 906 (1976); *In re Kennedy,* 442 A.2d 79, 92 (Del.1982). Here, respondent contends that he was denied notice and an opportunity to be heard in the disciplinary proceedings in Palau.

In the instant case, Disciplinary Counsel attempted to locate respondent in order to serve him with notice of the disciplinary charges against him, but respondent had departed Palau without providing any information as to his whereabouts to either his office staff or the Palau Bar. Respondent's conduct compelled Disciplinary Counsel to resort to service by certified mail in accordance with Palau's Rules of Civil Procedure.[10] The

---

10. Similarly, we also allow service by mail in
cases where it is established that personal service

Supreme Court of Palau concluded that disbarment was the proper sanction in respondent's case after having conducted an *ex parte* hearing. *See generally In re Williams, supra,* 464 A.2d at 119 (before Hearing Committee concluded that disbarment was an appropriate sanction, it "should have proceeded with an *ex parte* hearing to establish by sworn evidence that the specification of charges was true"). In light of these circumstances, we find no merit to respondent's general allegations of due process violations.[11]

Respondent also claims that his disbarment from the District would generally result in grave injustice, and therefore, reciprocal discipline should not be imposed against him. Our present rule provides that "[r]eciprocal discipline shall be imposed *unless* the attorney demonstrates, by clear and convincing evidence, that ... (3) [t]he imposition of the same discipline by the Court would result in grave injustice...." D.C.Bar R. XI, § 11(c)(3) (emphasis added). This rule "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992) (footnote omitted); *see also In re Velasquez,* 507 A.2d 145, 146 (D.C.1986) (per curiam). Despite respondent's claim that his disbarment would result in grave injustice, the majority of the Board aptly notes that we disbarred an attorney for engaging in similar misconduct. *See In re Gilbert,* 538 A.2d 742, 746 (D.C.) (per curiam), *cert. denied,* 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 56 (1988). However, the Board also acknowledges that a lesser sanction was imposed in *In re Rosen,* 570 A.2d

728 (D.C.1989) (per curiam),[12] a case which involved "essentially the same misconduct [as in *Gilbert* and the instant case], but under far less egregious circumstances." *Id.* at 730.

With the *Rosen* and *Gilbert* decisions serving as reference points, the majority of the Board weighed the egregiousness of respondent's misconduct and concluded that it was analogous to that committed in *In re Gilbert.* After reviewing these cases, we are inclined to agree with the majority's opinion. In *In re Rosen,* Rosen's misconduct stemmed from his failure to apprise the Maryland bar that subsequent civil suits and disciplinary proceedings had been initiated against him in the District while his bar application was pending. *Id.* at 728–729. At the time Rosen submitted his application, it accurately indicated that no complaints were pending against him. *Id.* at 728. When it was discovered that these complaints were pending against Rosen at the time he swore an oath that all the information provided in his bar application was still true and correct, Rosen was subjected to disciplinary proceedings in Maryland. *Id.* at 729. In the District's reciprocal disciplinary proceedings which followed thereafter, the Board found that Rosen's conduct was not intentional, but that he acted "with reckless disregard as to the truth or falsity of the information he had supplied to Maryland...." *Id.*[13] In contrast, the attorney in *In re Gilbert, supra,* had "*intentionally* failed to disclose a material fact" in his Maryland bar application when he falsely answered on his application that he had not been involved in any previous law suit. 538 A.2d at 744 (emphasis added).[14]

Viewing respondent's conduct within this framework, the evidence demonstrates that his conduct was deliberate and calculated.

cannot be effectuated. *See* D.C.Code § 11–2503(b) (1989 Repl.).

11. In addition, we find no infirmity of proof establishing the misconduct as generally claimed by respondent under D.C.Bar R. XI, § 11(c)(2).

12. Nine-month suspension from the practice of law with proof of fitness. *In re Rosen, supra,* 570 A.2d at 730.

13. We note that Rosen testified that when he signed the oath, he neither remembered nor reviewed the contents of his affidavit and the questionnaire. In addition, he suggested that he had

misunderstood or misread the language of the oath. *See In re Rosen, supra,* 570 A.2d at 729.

14. Ten years before applying for membership in the Maryland bar, Gilbert had been a plaintiff in a civil suit against an insurance company in which he attempted to recover proceeds from his deceased wife's life insurance policies. *In re Gilbert, supra,* 538 A.2d at 743. Gilbert's claim was denied by the trial court, which found that he had intentionally caused the death of his wife in order to obtain the life insurance proceeds. *Id.*

As characterized by the Board, respondent cleverly manipulated the flow of information between the District of Columbia, Florida, and Palau in order to practice law. Moreover, respondent has not provided a scintilla of support for his general claim that disbarment from the District would result in grave injustice. Under these circumstances, we are persuaded by the majority opinion of the Board that the egregiousness of respondent's misconduct is similar to that found in *In re Gilbert*, and therefore, the imposition of reciprocal discipline in respondent's case would not result in grave injustice.[15]

Having found the Palau disbarment order to be a final decision of a "territory" within the meaning of the District's reciprocal disciplinary rules and given the evidence in the record before us, we find that reciprocal discipline is warranted in the instant case.

Accordingly, it is

ORDERED that David B. Webster be, and hereby is, disbarred from practicing law in the District of Columbia, effective thirty days from the date of this opinion.

*So Ordered.*

---

**15.** We note that the dissenting Board member finds the instant case to be analogous to *In re Rosen*, and therefore, recommends a nine-month suspension against respondent as an appropriate sanction. Although we acknowledge the dissenting Board member's position, we are persuaded to follow the majority opinion of the Board which considered *In re Rosen*, but found that the egregiousness of respondent's conduct is comparable to the misconduct involved in *In re Gilbert*.