PER CURIAM.
The Florida Bar petitions the Court for review of a referee’s report recommending Gary H. Untracht’s reinstatement to the practice of law after a two-year suspension. We have jurisdiction. See art. V, § 15, Fla. Const. For, the reasons expressed below, we reject the referee’s recommendation and deny Untracht’s reinstatement.
BACKGROUND
In April 2000, Untracht, an attorney licensed to practice law in New Jersey and Florida, was practicing as a sole practitioner in New Jersey handling plaintiffs’ negligence claims when his practice was randomly audited by the New Jersey Office of Attorney Ethics (OAE). The audit showed Untracht failed to maintain proper trust accounting records, including failing to keep individual ledger cards for receipts and disbursements. The OAE filed formal *458 charges alleging Untracht intentionally misappropriated $55,437.06 in client trust funds. Untracht repaid the shortfall amount within sixty days with his own personal funds. Although he admitted the funds were taken from the trust account before they were due and owing, he denied the misappropriation was intentional due to his state of mind from 1998 to 2000, the period encompassing the violations.[1] Un-tracht cooperated fully in the New Jersey investigation.
The Supreme Court of New Jersey disbarred Untracht on September 23, 2002, for violating New Jersey Rules of Professional Conduct 1.15(a) (knowing misappropriation of trust funds), 1.15(d) (recordkeeping violations), and 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). In re Untracht, 174 N.J. 344, 805 A.2d 1208 (2002).
The Florida Bar instituted disciplinary proceedings against Untracht, after which the parties entered into a Conditional Guilty Plea for Consent Judgment (plea). The .plea makes no mention of the fact that Untracht’s disbarment in New Jersey was permanent.
A Report of the Referee (report) was filed with the Court on September 15, 2003, which, in large part, repeated the terms of the plea. The report found Un-tracht violated rules 4-1.15 (complying with trust accounting rules), 4-8.4(a) (violating Rules of Professional Conduct), 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 4-8.4(d) (engaging in conduct prejudicial to the administration of justice), 5-1.1(a) (defining nature of money or property entrusted to attorney), and 5-1.2 (defining trust accounting records and procedures) of the Rules Regulating the Florida Bar. The referee further found Un-tracht’s lengthy legal career, over twenty-five years, an aggravating factor. He found several mitigating factors, including: (1) lack of prior disciplinary history; (2) absence of a dishonest or selfish motive; (3) personal and emotional problems; (4) timely good-faith effort to make restitution or to rectify consequences of misconduct; (5) good character and reputation; (6) physical or mental disability or impairment; (7) interim rehabilitation; and (8) remorse. Based on the misconduct and the aggravating and mitigating factors, the referee recommended Untracht be suspended for two years effective, nunc pro tunc, September 23, 2002.
Neither party contested the report. The Court, on October 2, 2003, suspended Untracht for two years effective, nunc pro tunc, September 23, 2002. See Fla. Bar v. Untracht, 859 So.2d 516 (Fla.2003).
On March 18, 2004, Untracht petitioned this Court for reinstatement. The issue of reinstatement was tried before a referee on January 10, 2005. The referee found Untracht clearly and convincingly proved: (1) his strict compliance with the previous disciplinary order; (2) his professional ability and competence; (3) his lack of malice toward those involved in bringing the previous disciplinary proceedings or The Florida Bar; (4) his strong repentance and genuine intention of proper conduct in the future; and (5) his good moral character. The referee recommends Untracht be reinstated to the practice of law in Florida.
The Florida Bar petitions for review of the referee’s report, not because it opposes *459 Untracht’s reinstatement but because it believes the Court’s decision in Florida Bar re Sanders, 580 So.2d 594 (Fla.1991), bars his reinstatement unless this Court recognizes an exception to the rule of law laid down there.
ANALYSIS
The Bar is correct in its assertion that this Court’s decision in Sanders prevents Untracht’s reinstatement as long as he has not been readmitted to the practice of law in his home state of New Jersey. As that has not occurred, Untracht’s petition for reinstatement must be denied and the referee’s recommendation to the contrary rejected.
This Court has stated, time and again: “We should not allow the practice of law in Florida of one disbarred in his home state.” Fla. Bar re Sanders, 580 So.2d 594 (Fla.1991) (denying reinstatement to The Florida Bar of attorney disbarred in his home state of New York who had not gained readmission to the Bar in that state); cf. Fla. Bd. of Bar Exam’rs re Higgins, 772 So.2d 486 (Fla.2000) (holding disbarred Florida attorney ineligible for readmission as long as his disbarment in New Jersey in effect).
In Sanders, this Court denied reinstatement to an attorney who had been suspended in Florida for misconduct in New York, which had led to his disbarment in New York. This Court cited two reasons for its denial: (1) the attorney had not been readmitted in New York, although he had applied for readmission in that state three times; and (2) the attorney’s civil rights had not yet been restored. In a brief opinion denying rehearing, this Court noted that the attorney had submitted proof that his civil rights had been restored and stated the attorney would be readmitted in Florida “if he is readmitted to practice in his home state of New York within twelve (12) months.” Sanders, 580 So.2d at 594-95.
We have since recognized only one exception to the rule laid down in Sanders— namely, the rule does not apply where the Florida discipline became final before the discipline in the other state. See Fla. Bar re Susser, 639 So.2d 30 (Fla.1994) (reinstating attorney suspended in Florida and subsequently disbarred in Ohio for crimes in Ohio, even though the attorney had not been readmitted in Ohio); see also Fla. Bar re Sickmen, 523 So.2d 154 (Fla.1988) (reinstating attorney suspended for three years in Florida after felony conviction, even though attorney had been disbarred in New York for the same misconduct and had not been readmitted in that state because Florida discipline came first).
Untracht was disbarred in New Jersey before he was suspended in Florida. The exception recognized in Susser does not apply to him. This Court’s decision in Sanders precludes Untracht’s reinstatement unless the Court creates another exception to the rule laid down there. This the Court is unwilling to do.
Critically, disbarment is the presumptively appropriate sanction for misuse or misappropriation of client funds. Fla. Bar v. Tillman, 682 So.2d 542 (Fla.1996); Fla. Bar v. Knowles, 572 So.2d 1373 (Fla.1991). While mitigating factors such as cooperation, restitution, and the absence of a previous disciplinary history should be taken into account, they are insufficient to overcome the presumption of disbarment for misusing client funds. Fla. Bar v. Travis, 765 So.2d 689 (Fla.2000).
CONCLUSION
The report of the referee is rejected and Gary H. Untracht is hereby denied reinstatement to The Florida Bar pursuant to the rule laid down in Florida Bar re Sand *460 ers, 580 So.2d 594 (Fla.1991). Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Gary H. Untracht in the amount of $1445, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., and WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., dissents.

. During 1998 to 2000, Untracht was representing himself in a contentious divorce and custody battle, which consumed a large amount of his time and pulled him away from his law practice. He was in court two to three times per month in connection with the case and was responsible for preparing, typing, filing, and arguing multiple motions. He was also the primary caretaker of his mother, who had had a stroke.