3 So.3d 1058 (2009)
FLORIDA BOARD OF BAR EXAMINERS RE David WEBSTER.
No. SC08-296.
Supreme Court of Florida.
January 30, 2009.
Rehearing Denied February 26, 2009.
*1059 Michele A. Gavagni, Executive Director and Thomas A. Pobjecky, General Counsel, Florida Board of Bar Examiners, Tallahassee, FL, for Petitioner.
John A. Weiss of Weiss and Etkin, Tallahassee, FL, for Respondent.
PER CURIAM.
This case is before the Court on the petition of David Webster for review of the Florida Board of Bar Examiners' ("Board's") decision to cease processing Webster's application for readmission to The Florida Bar. Webster requests that this Court extricate and rescue him from the web of deceit, deception, and lies that he has woven since he was first suspended from The Florida Bar in 1988. Webster's gossamer guile was eventually discovered and caused him to be disbarred in several foreign jurisdictions for reasons other than his various Florida trust-account violations, which produced his earlier suspension in this state. We have jurisdiction. See art. V, § 15, Fla. Const.
We approve the Board's action regarding Webster's application. As more fully explained below, Webster is ineligible to apply for readmission under the Rules of the Supreme Court Relating to Admissions to the Bar and relevant case law because he has not been readmitted to the practice of law in the jurisdictions in which he committed the relevant professional misconduct. We should not allow the practice of law in Florida by one disbarred in a foreign state. See, e.g., Fla. Bar re Sanders, 580 So.2d 594, 594 (Fla.1991); Fla. Bar Admiss. R. 2-13.1.

I. BACKGROUND
Webster was admitted to the Bar of Washington, D.C. ("D.C. Bar"), on October 1, 1968. The following year, he was admitted to The Florida Bar. Thereafter, Webster was suspended from The Florida Bar on an emergency basis on November 18, 1988 (effective December 18, 1988), for various trust-account violations. On May 24, 1990, he was suspended for eighteen months, nunc pro tunc December 18, 1988, in two cases, and for an additional six months in a third with both suspensions to run concurrently. See Fla. Bar v. Webster, 564 So.2d 490 (Fla.1990); see also Fla. Bar v. Webster, 662 So.2d 1238, 1239 (Fla.1995); Fla. Bar re Webster, 647 So.2d 816, 816 (Fla.1994). His suspension was to be followed by two years of probation under multiple terms and conditions. However, Webster conveniently failed to inform the D.C. Bar of his disciplinary problems and suspension in Florida and thus remained in good standing in that jurisdiction.
In 1990, without having petitioned for reinstatement from his suspension in Florida,[1] Webster applied for admission to the Bar of the Federated States of Micronesia.[2] In his written and sworn application *1060 in that jurisdiction, Webster untruthfully stated that he was not under an order of suspension or disbarment from any authority. Based upon his misrepresentations, Webster was admitted to the Micronesia Bar and practiced as an assistant attorney general in that jurisdiction.
On May 30, 1991, Webster executed an Oath of Admission to Practice in the Republic of Palau[3] along with an affidavit to accompany his application for admission to the Palau Bar, stating that he was a member in good standing of the D.C. Bar. However, he failed to reveal his prior membership and suspended status with The Florida Bar. In July 1991, Webster executed an Oath of Office and was appointed Special Interim Prosecutor in Palau.
In 1992, Webster petitioned for reinstatement in Florida, which was ultimately denied. See Fla. Bar re Webster, 647 So.2d 816, 818 (Fla.1994). On September 18, 1992, the U.S. Department of the Interior, Webster's employer in Palau, terminated his employment. On November 13, 1992, the Supreme Court of Palau disbarred Webster for material omissions and misrepresentations in his Palau Bar application, i.e., his failure to disclose his membership in, and suspension from, The Florida Bar. Thereafter, the District of Columbia Court of Appeals disbarred Webster on June 22, 1995 (effective July 22, 1995), based upon his professional misconduct in Palau and his failure to notify the D.C. Bar of his previous misconduct and suspension in Florida (which were separate ethical violations). See In re Webster, 661 A.2d 144, 146-47, 150 (D.C. 1995); D.C. Bar R. XI, § 11(b) (1994). Webster's deceit and misrepresentations similarly caused Micronesia to disbar him on July 14, 1995. Finally, on November 16, 1995,[4] this Court disbarred Webster based upon his professional misconduct in Micronesia, Palau, and the District of Columbia. See Fla. Bar v. Webster, 662 So.2d 1238, 1240-41 (Fla.1995). We determined that "Webster intentionally deceived the Micronesia and Palau Bars for his personal gain," and we expressly incorporated the conclusion of the District of Columbia Court of Appeals: "Webster's conduct was deliberate and calculated.... Webster cleverly manipulated the flow of information between the District of Columbia, Florida, and Palau in order to practice law." Webster, 662 So.2d at 1240 (brackets and quotation marks omitted) (emphasis supplied) (quoting Webster, 661 A.2d at 149-50).
*1061 The dissent is incorrect to suggest that this discipline was predicated upon Webster's "original misconduct" in Florida. It is readily apparent that Webster's various Florida trust-account violations produced a suspension here in 1990, which applied nunc pro tunc from 1988 forward. However, it is also evident that Webster's subsequent, further, additional, and distinct misconduct (i.e., material misrepresentations regarding professional discipline)  which did not occur in Florida  led to his disbarment in these foreign jurisdictions where Webster was then engaged in the practice of law while suspended in Florida.
On December 22, 2004, Webster filed an application for readmission to The Florida Bar and paid the fee applicable to applications by disbarred attorneys. See Fla. Bar Admiss. R. 2-27. He later filed an amendment in October 2005. Following an investigatory hearing conducted in September 2006, the Board filed specifications on October 31, 2006. Approximately four months before the date scheduled for a formal hearing concerning several specifications, the Board advised Webster that it had ceased processing his application on the ground that he was and remains ineligible for readmission pursuant to this Court's decisions in Florida Board of Bar Examiners re Utterback, No. SC06-2309 (Fla. Mar. 8, 2007) (corrected order), and Florida Board of Bar Examiners re Davis, No. SC05-2190 (Fla. Feb. 16, 2006), rehearing denied (June 22, 2006). After the Board denied Webster's motion for reconsideration of its decision, he petitioned this Court for review.

II. ANALYSIS
The decision of the Board follows, and is in conformity with, clear Florida law. Therefore, we approve the Board's decision and hold that Webster was and remains ineligible to apply for readmission in Florida. In relevant part, rule 2-13.1 of the Rules of the Supreme Court Relating to Admissions to the Bar provides:
A person who has been disbarred from the practice of law ... shall not be eligible to apply for a period of 5 years from the date of disbarment ... or such longer period as is set for readmission by the jurisdictional authority.

(Emphasis supplied.) This rule was adopted "to prevent Florida from being a haven for attorneys disbarred in other jurisdictions and to preserve public respect and confidence in Florida's judicial system." Fla. Bd. of Bar Exam'rs re Higgins, 772 So.2d 486, 487 (Fla.2000) (holding that an attorney disbarred in his "home state" (generally the state in which the professional misconduct occurred) must first be readmitted in that jurisdiction before he becomes eligible for readmission in Florida). Webster has not gained readmission in Palau, Micronesia, and Washington, D.C.,[5] and, therefore, is ineligible to apply for readmission here under rule 2-13.1 and supporting case law. See, e.g., Higgins, 772 So.2d at 486 ("On its face, then, because Higgins has been permanently disbarred in [the jurisdictional situs of his professional misconduct], [rule 2-13.1] precludes his application for readmission in Florida.").
Webster and our dissenting colleagues essentially contend that we should return to an ad hoc approach with regard to Bar readmissions in the State of Florida. However, he is not the first to face the consequences of misconduct in a foreign jurisdiction, which impacts the status of *1062 Bar membership in Florida. In Higgins, an attorney was disbarred in Florida for three years under a consent judgment. Approximately one year later, he was convicted of a felony in federal court in New Jersey and, thereafter, permanently disbarred in New Jersey. We held that he remained ineligible to apply for readmission in Florida so long as he remained disbarred in New Jersey. See 772 So.2d at 487; see also Fla. Bar re Untracht, 923 So.2d 457, 459 (Fla.2006) (denying reinstatement to an attorney who was permanently disbarred in New Jersey and subsequently suspended in Florida for two years when the attorney had not been readmitted in New Jersey); Fla. Bar v. Eberhart, 631 So.2d 1098, 1098-99 (Fla.1994) (attorney suspended in Connecticut who later resigned from the Connecticut Bar was subsequently disbarred in Florida and remained ineligible to apply for readmission to The Florida Bar unless and until readmitted to practice in Connecticut); Fla. Bd. of Bar Exam'rs re R.L.V.H., 587 So.2d 462, 463 (Fla.1991) (attorney disbarred in Ohio ineligible to apply for membership in The Florida Bar until readmitted to practice in Ohio); Sanders, 580 So.2d at 594 ("We should not allow the practice of law in Florida of one disbarred in his home state.").
There has been no injustice or regulatory oversight in this case. Webster has committed separate acts of professional misconduct in multiple jurisdictions. Webster's disbarment in several foreign jurisdictions based upon separate instances of unethical conduct there  and Webster's corresponding inability to obtain readmission in these jurisdictions  is not an unintended result; rather, these circumstances are the product of Webster's actions. Webster has personally created the supposedly untenable circumstances that he now faces. If Webster had not lied to the foreign jurisdictions with regard to his member status in Florida, then he would not have committed additional ethical violations in those jurisdictions (i.e., coverup deception). Instead, had Webster told the truth, those jurisdictions would have explained that he was first required to seek reinstatement in Florida and then to apply for membership with those foreign bars, not the other way around. Since he chose the latter course (through active deceit), he is saddled with the ensuing consequences.
Webster contends that he should not be required to gain readmission in Palau because Florida, not Palau, is his "home state." Once more, we reject this contention with regard to the meaning of "home state" as applied to attorney discipline. Like Webster, the attorney in Florida Bar v. Shapiro, 914 So.2d 956 (Fla.2005) (table), asserted that New York (where the misconduct occurred) was not his "home state" and, therefore, he should not have been required to gain reinstatement in New York before applying for reinstatement in Florida. In that case, we followed the implicit logic of Untracht, Higgins, Eberhart, R.L.V.H., and Sanders to determine that an attorney's "home state" for purposes of attorney discipline is determined by consideration of the jurisdiction in which the attorney was practicing when the misconduct occurred, the situs of the misconduct that resulted in discipline, and the jurisdiction in which disciplinary proceedings were first initiated. Contrary to the view of the dissent, Webster was not practicing law in Florida when the subject misconduct occurred  in fact, at that time, he was suspended here. In Shapiro, the order suspending the attorney provided that he would remain ineligible to apply for reinstatement in Florida until he had attained reinstatement in New York. The attorney's professed intention of not returning to practice in the state in which the misconduct *1063 and discipline occurred (i.e., New York) was irrelevant to the requirement that he first attain reinstatement in that foreign jurisdiction before applying for reinstatement in Florida.
Here, Webster was disbarred in Palau, Micronesia, and Washington, D.C., for misconduct that occurred in those foreign jurisdictions (not Florida), i.e., misrepresentations made there with regard to his suspended status in Florida for totally distinct trust-account misconduct. Palau, Micronesia, and Washington, D.C., each disbarred Webster based upon misconduct that occurred outside Florida while he was practicing in those foreign jurisdictions and while under suspension here and before he was disbarred here. In other words, his disbarment here was only reciprocal discipline  he was disbarred here for misconduct that occurred in Palau, Micronesia, and Washington D.C.,[6] for which Palau first sanctioned him. Thus, Palau, Micronesia, and Washington, D.C., are the pertinent locations for purposes of determining reciprocal discipline in Florida.
Webster claims that the Board should have known years ago, when Sanders was first decided, that he was ineligible to apply for readmission and, therefore, the Board should have refused to accept his application and filing fee. See Sanders, 580 So.2d at 594. Webster ignores the fact that our decision in Sanders was equally available to him; if Sanders so clearly applied to the circumstances extant here, Webster also knew that he was ineligible to apply for readmission in Florida. While the application of our precedent in the Bar admissions process is clear, we cannot fault the Board's cautious approach to, and interpretation of, the impact of these decisions upon its duty to assess an applicant for readmission. That being said, Webster and the dissent nevertheless overlook the fact that the processing of an application or petition creates no right to readmission or reinstatement to The Florida Bar, or even the full consideration of such applications or petitions if the applicant remains disbarred or suspended in the relevant foreign jurisdiction(s). See Untracht, 923 So.2d at 459; Higgins, 772 So.2d at 486; Eberhart, 631 So.2d at 1098-99; R.L.V.H., 587 So.2d at 463; Sanders, 580 So.2d at 594.
The Board's processing of the application in Davis, No. SC05-2190, provides a clear indication that the Board was cautious in considering the impact of Untracht, Higgins, Eberhart, R.L.V.H., and Sanders upon a disbarred attorney's eligibility to apply for readmission or to be admitted while still disbarred in another jurisdiction. In Davis, an attorney, licensed in both Georgia and Florida, resigned in both jurisdictions after pleading guilty to mail fraud in Georgia. Davis applied for readmission in Florida. Following a hearing, the Board found that Davis had proven his rehabilitation and recommended his readmission. In February 2006, this Court, as the final arbiter of the suitability to practice law in this state, disapproved the readmission recommendation and clearly held that the applicant would not be eligible to apply until "fully readmitted and reinstated without condition to the Georgia Bar." Thus, if there was any question, the Davis decision clarified the scope of this Court's decisions in Untracht, Higgins, Eberhart, R.L.V.H., *1064 and Sanders within the context of Bar readmission. See Fla. Bar Admiss. R. 2-13.1, 2-14, 3-11, 3-12, 3-13; R. Regulating Fla. Bar 3-7.10.
We also note that Utterback, Case No. SC06-2309, was the first instance in which we reviewed the Board's reliance on Untracht, Higgins, Eberhart, R.L.V.H., and Sanders to cease processing a readmission application without conducting a formal hearing and establishing a record for possible review by this Court. Consequently, it became abundantly clear on the date of this Court's corrected order in Utterback (March 8, 2007), that the Board could terminate processing an application without a complete formal hearing when an applicant remained disbarred in the relevant foreign jurisdiction(s).

III. CONCLUSION
Accordingly, we continue to follow well-established Florida law and hold that an attorney who has been (i) disbarred or suspended in a foreign jurisdiction for misconduct which occurred in that foreign jurisdiction, and (ii) disbarred or suspended in Florida in reciprocal disciplinary proceedings shall remain ineligible to apply for readmission (if disbarred) or to petition for reinstatement (if suspended) until first readmitted or reinstated in the foreign jurisdiction. If we failed to follow this sound precedent, we would only open Florida as a haven for those attorneys disbarred or suspended in foreign jurisdictions. This theory and precedent is not new or novel. If we are to maintain the respect necessary for a sound legal system, and support public trust and confidence in those entrusted with the most sacred of duties, we cannot fail in our responsibility to follow this uniform principle: We should not allow the practice of law in Florida by one disbarred or suspended in a foreign state. See Untracht, 923 So.2d at 459; Higgins, 772 So.2d at 486; Eberhart, 631 So.2d at 1098-99; R.L.V.H., 587 So.2d at 463; Sanders, 580 So.2d at 594. We announced long ago that we do not follow an ad hoc approach to bar-admission policy or admissions. See Fla. Bd. of Bar Exam'rs re Hale, 433 So.2d 969, 971-72 (Fla.1983). Therefore, in keeping with our precedent, the Florida Board of Bar Examiners' dismissal of Webster's readmission application is hereby approved.
It is so ordered.
QUINCE, C.J. and LEWIS and POLSTON, JJ., concur.
CANADY, J., concurs in result only.
PARIENTE, J., dissents with an opinion, in which WELLS, J., and ANSTEAD, Senior Justice, concurs.
PARIENTE, J., dissenting.
The issue raised by this case is whether there is any jurisdiction in which Webster should be allowed to petition for reinstatement and demonstrate his rehabilitation and fitness to practice law. The Florida Board of Bar Examiners considered the Republic of Palau as the "home state." I dissent because under the circumstances of this case, Florida is the appropriate "jurisdictional authority" under Rule 2-13.1 of the Rules of the Supreme Court Relating to Admissions to the Bar.
Webster is currently disbarred in Florida, the District of Columbia, the Republic of Palau, and the Federated States of Micronesia, as more fully set forth in the majority opinion. The Board ceased processing Webster's application for reinstatement "pending receipt of his unconditional readmission to the practice of law in the Republic of Palau." The Board based this condition for reinstatement on its determination that "the Republic of Palau [was Webster's] home state during his residency there" and "the Supreme Court of the *1065 Republic of Palau disbarred [Webster] for misconduct committed in that jurisdiction." However, because Webster is ineligible to apply for readmission in Palau because he has been disbarred elsewhere, he is left without an avenue to seek readmission and attempt to establish rehabilitation.
The key to our analysis is to determine whether the Board correctly determined that the Republic of Palau was Webster's "home state" or the "jurisdictional authority" that governs whether disbarred attorneys can seek admission in Florida pursuant to rule 2-13.1. Rule 2-13.1 precludes disbarred attorneys from seeking admission in Florida for a period of five years from the date of disbarment "or such longer period as is set for readmission by the jurisdictional authority."
My dispute is not with the wisdom of this rule and its application in the overwhelming majority of cases. In most cases, principles of comity and fairness dictate that we not readmit a lawyer in Florida when he or she would not be admitted in the other jurisdiction, when the State or jurisdiction where the misconduct occurred provides for a longer period of discipline, and where our disbarment or disciplinary action is based on that State or jurisdiction's imposition of sanctions. Yet, several things are clear in this case that distinguish it from other cases where we upheld the dismissal of petitions. First, Florida was the first state where Webster's misconduct resulted in disciplinary action.[7] I recognize that his misconduct in Palau, Micronesia, and the District of Columbia resulted from distinct omissions and misrepresentations, but those omissions and misrepresentations all related to his failure to disclose his disciplinary status in Florida. Second, this is not a case where Palau imposed a greater sanction than Florida. In this case, under the bar rules in Palau, Webster cannot gain readmission to the Bar of Palau if he is disbarred elsewhere.
While I understand that Webster's predicament is of his own making, in my view, one jurisdiction must be the pertinent "jurisdictional authority" for purposes of the rule. Because in this case Florida was the state in which the original misconduct occurred and because Florida is the state with which Respondent has had the most contacts and in which he primarily practiced law, Florida should be considered the "jurisdictional authority."
With regard to our prior cases, I completely agree with the policy rationale as expressed in Florida Board of Bar Examiners re Higgins, 772 So.2d 486, 487 (Fla. 2000), and reaffirmed by the majority, that the rule was adopted "to prevent Florida from being a haven for attorneys disbarred in other jurisdictions and to preserve public respect and confidence in Florida's judicial system." Id. Cases such as Higgins, which involved permanent disbarment in New Jersey based on a conviction of a felony in federal court, and Florida Bar re Untracht, 923 So.2d 457 (Fla.2006), which involved permanent disbarment in New Jersey and a subsequent suspension in this State for two years, are perfect examples of the appropriate application of this rule.
The majority asserts that we have already rejected the argument that Florida is Respondent's "home state," in other words, the pertinent "jurisdictional authority" under rule 2-13.1, citing to Florida Bar v. Shapiro, 914 So.2d 956 (Fla.2005). Although this Court may have "followed the implicit logic of Untracht, Higgins, Eberhart, R.L.V.H., and Sanders" in deciding Shapiro, that case does not involve *1066 a written opinion so I question how the majority relies on it to set forth a definition of "home state": "the jurisdiction in which the attorney was practicing when the misconduct occurred, the situs of the misconduct that resulted in discipline, and the jurisdiction in which disciplinary proceedings were first initiated." Majority op. at 1062. But if we are today officially adopting that definition of the pertinent "jurisdictional authority" under rule 2-13.1 and applying it to conclude that Palau is the "jurisdictional authority," I believe we have strayed from the intent of the rule as envisioned by our opinion in Higgins of preventing disbarred attorneys from coming to Florida as a "haven for attorneys disbarred in other jurisdictions and to preserve public respect and confidence in [the] judicial system."
In any event, in this case I would conclude that Florida and not Palau is the pertinent "jurisdictional authority." Florida is the state where Webster was practicing when the original misconduct occurred, the situs of the misconduct that resulted in discipline, and the jurisdiction in which disciplinary proceedings were first initiated. Florida and not Palau is also the jurisdiction in which Webster has the most contacts and in which he has primarily practiced law. Although I certainly acknowledge that he committed additional acts of misconduct when he lied to gain admission to the Palau Bar, that does not exclude Florida as the logical jurisdiction where he should attempt to be readmitted as opposed to Palau. Further, it is clear that Palau will refuse to grant him readmission because he is disbarred in Florida.
In this case Webster submitted his application for readmission to The Florida Bar on December 22, 2004, after he had taken the Bar examination. A formal hearing had been set for December 2007, and discovery had been completed, when the Board advised Webster, on August 1, 2007, that they would cease processing his file and dismiss his application pending his readmission to the Bar of the Republic of Palau. I would give Webster a chance to demonstrate his character and fitness to be readmitted in Florida, which could include conditions that he meet certain criteria in the foreign jurisdictions.
Therefore, I would reverse the dismissal of the petition for reinstatement and allow Webster to proceed to a formal evidentiary hearing. It may very well be that he cannot demonstrate the stringent requirements for rehabilitation necessary for reinstatement or that the Board would find that his prior actions are individually and collectively disqualifying, but in my view he should be given that opportunity. Further, if rehabilitation is established, I would require that Webster establish that he will be able to be reinstated in the other jurisdictions as a condition of his being readmitted to practice.[8] In this case, however, Florida rather than Palau should take the lead as the pertinent "jurisdictional authority" under rule 2-13.1. Otherwise, by approving the dismissal of the petition for readmission, we are effectively permanently disbarring him, a result that I do not believe we intended by our rules.
WELLS, J., and ANSTEAD, Senior Justice, concur.
NOTES
[1] The provision requiring that an attorney suspended for more than ninety days petition for reinstatement and demonstrate rehabilitation prior to being returned to member-in-good-standing status has existed in the Rules Regulating the Florida Bar from 1988 (the time of Webster's emergency suspension) through present day. See R. Reg. Fla. Bar 3-5.1(e).
[2] The Federated States of Micronesia constitute a Pacific island nation, which spans portions of the eastern and western Caroline Islands. Following World War II, the United States administered Micronesia as a trust territory pursuant to a United Nations agreement and mandate. In 1986, Micronesia declared its independence and entered into a Compact of Free Association with the United States, while adopting a tripartite form of government based upon its 1979 constitution. See generally Government of the Federate States of Micronesia, http://www.fsmgov.org/info/; Central Intelligence Agency, The World Factbook, https://www.cia.gov/library/publications/the-world-factbook/geos/fm.html (last accessed Jan. 20, 2009).
[3] Palau is a Pacific island nation located in the western portion of the Caroline Islands. Following World War II, the United States administered Palau as a trust territory pursuant to a United Nations agreement and mandate. In 1994, Palau declared its independence and entered into a Compact of Free Association with the United States, while adopting a tripartite constitutional form of government. See In re Webster, 661 A.2d 144, 145 (D.C. 1995); Republic of Palau National Government, http://www.palaugov.net/; Central Intelligence Agency, The World Factbook, https://www.cia.gov/library/publications/the-world-factbook/geos/ps.html (last accessed Jan. 20, 2009).
[4] Effective nunc pro tunc November 17, 1994.
[5] As is more fully explained below, these are the relevant "jurisdictional authorities" with regard to Webster's most recent professional misconduct, which, to reiterate, did not occur in Florida. Furthermore, Webster's disbarment in these jurisdictions preceded his reciprocal disbarment in Florida.
[6] Webster's misconduct in Palau and Micronesia consisted of his misrepresentations in admissions applications concerning prior misconduct and discipline in Florida; whereas, his additional misconduct in the District of Columbia consisted of his failure to notify that jurisdiction (in which he was already a practicing attorney) of his misconduct and resulting suspension in Florida along with his later professional misconduct in Palau and Micronesia. See Webster, 661 A.2d at 146-47.
[7] The history of Webster's misdeeds is fully set forth in In re Webster, 661 A.2d 144 (D.C. 1995), and this Court's opinion disbarring him in Florida Bar v. Webster, 662 So.2d 1238 (Fla. 1995).
[8] This would require that he demonstrate that the other jurisdictions would readmit him if he is readmitted in Florida.